# IN RE DISBARMENT OF ISSERMAN.

No. 5, Misc.   Decided April 6, 1953.

*Leonard B. Boudin* for Isserman, respondent.

MR. CHIEF JUSTICE VINSON announced the order of the Court and an opinion in which MR. JUSTICE REED, MR. JUSTICE BURTON and MR. JUSTICE MINTON join.

Abraham J. Isserman, respondent herein, was attorney for several of the eleven defendants whose convictions were affirmed by this Court in *Dennis* v. *United States,* 341 U. S. 494 (1951).   At the conclusion of the trial proceedings, the trial judge sentenced all six defense attorneys, including respondent, to jail for contempt. There was one charge of conspiracy by the defense attorneys to obstruct the trial and thirty-nine charges of specific acts of contempt, six of which related to the respondent.   The Court of Appeals reversed as to the conspiracy charge but affirmed as to thirty-seven of the specific acts of contempt, including all six naming the

respondent, *United States* v. *Sacher,* 182 F. 2d 416 (1950). Upon a limited grant of certiorari, this Court also affirmed, *Sacher* v. *United States,* 343 U. S. 1 (1952).

Respondent had been a member of the bar of New Jersey. Following the affirmance of the contempt sentence here, the Supreme Court of the State issued an order disbarring respondent.[1]

We then issued a rule for the respondent to show good cause why he should not be disbarred here.[2] This was done in accordance with Rule 2, par. 5, of this Court:

> "Where it is shown to the court that any member of its bar has been disbarred from practice in any State, Territory, District, or Insular Possession, or has been guilty of conduct unbecoming a member of the bar of this court, he will be forthwith suspended from practice before this court, and unless, upon notice mailed to him at the address shown in the clerk's records and to the clerk of the highest court of the State, Territory, District or Insular Possession, to which he belongs, he shows good cause to the contrary within forty days he will be disbarred."

This Court (as well as the federal courts in general) does not conduct independent examinations for admission to its bar. To do so would be to duplicate needlessly the machinery established by the states whose function it has traditionally been to determine who shall stand to the bar. Rather our rules provide for eligibility in our bar of those admitted to practice for the past three years before the highest court of any state.[3] The

---

[1] *In re Isserman,* 9 N. J. 269, 87 A. 2d 903 (1952).

[2] Journal of the Supreme Court of the United States, June 2, 1952, p. 222.

[3] Rule 2, par. 1:

"It shall be requisite to the admission of attorneys or counsellors to practice in this court, that they shall have been such for three

obvious premise of the rule is the confidence which this Court has in the bars maintained by the states of the Union. Respondent himself came to our bar upon presenting a certificate of his admission to the bar of the highest court of New Jersey, which now no longer finds him qualified for its bar.

Disbarment by a state does not automatically disbar members of our bar, but this Court will, in the absence of some grave reason to the contrary, follow the finding of the state that the character requisite for membership in the bar is lacking, *Selling* v. *Radford*, 243 U. S. 46 (1917). But we do not follow the rule used in some state courts that disbarment in a sister state is followed as a matter of comity.[4]

The contemptuous acts have been catalogued elsewhere and need not be detailed here again.[5] In the main, they consisted of repetitious and insolent objections and arguments after the trial judge made rulings and then ordered a halt to further argument on the points involved. As we observed in affirming the contempt sentences, such ". . . conduct has been condemned by every judge who has examined this record under a duty to review the facts."[6] Now we have additional judicial voices condemning such conduct—the unanimous opinion of the New Jersey Supreme Court, speaking through Chief Justice Vanderbilt.

years past in the highest court of a State, Territory, District, or Insular Possession, and that their private and professional characters shall appear to be good."

[4] *In re Van Bever,* 55 Ariz. 368, 101 P. 2d 790 (1940); *In re Leverson,* 195 Minn. 42, 261 N. W. 480 (1935); *Copren* v. *State Bar,* 64 Nev. 364, 183 P. 2d 833 (1947); *In re Brown,* 60 S. D. 628, 245 N. W. 824 (1932); *State Board of Law Examiners* v. *Brown,* 53 Wyo. 42, 77 P. 2d 626 (1938).

[5] The contempt certificate in full is set forth in *United States* v. *Sacher,* 182 F. 2d 416, at 430 (1950).

[6] *Sacher* v. *United States,* 343 U. S. 1, 13 (1952).

Our rule puts the burden upon respondent to show good cause why he should not be disbarred. Let us examine the reasons advanced as meeting that burden. It is said that respondent has already been punished enough for his contempt and that to disbar him is excessive, vindictive punishment. Such an attitude misconceives the purpose of disbarment. There is no vested right in an individual to practice law. Rather there is a right in the Court to protect itself, and hence society, as an instrument of justice. That to the individual disbarred there is a loss of status is incidental to the purpose of the Court and cannot deter the Court from its duty to strike from its rolls one who has engaged in conduct inconsistent with the standard expected of officers of the Court. In so doing, we do not lay down a rule of disbarment for mere contempt;[7] rather we have considered the basic nature of the actions which were contemptuous and their relationship to the functioning of the judiciary.

The absence of a conspiracy is given as a ground against disbarment. Nothing in our rules refers to conspiracy as a factor. To make it the turning point in this disbarment proceeding would be tantamount to our stating that recurring disobedience is not cause for disbarment unless accompanied by a conspiracy.

It is urged upon us that a period of suspension at most is appropriate, for the District Court for the Southern District of New York only saw fit to suspend respondent for two years. But that was before respondent was disbarred in New Jersey. It is premature to say what action may be taken by that court under its rules[8] as a result of respondent's disbarment in New Jersey.

[7] See *Ex parte Tillinghast,* 4 Pet. 108 (1830).

[8] "The court shall make an order disbarring a member of the bar of this court (1) who has been convicted in any federal, state, or territorial court of an offense which is a felony in the jurisdiction of such conviction; or (2) who has been disbarred by any court of

The Supreme Court of New Jersey, in its nine-page opinion, devoted one sentence to noting that respondent had been convicted of statutory rape in 1925 and thereupon suspended from practice for a short period.[9] That one sentence is followed by this language: "The controlling consideration in reaching a determination as to the measure of discipline, however, is respondent's scandalous and inexcusable behaviour in seeking to bring the administration of justice into disrepute in a trial that lasted nine months."[10] It may be noted, however, that the files in the office of our Clerk show that the respondent did not disclose this conviction and suspension from practice in his application for admission to our bar,[11] so that we did not sanction that conduct in granting him admission.

The order of the Court placed the burden upon respondent to show good cause why he should not be disbarred. In our judgment, he has failed to meet this test. An order disbarring him from practice in this Court should issue.

*It is so ordered.*

Mr. JUSTICE CLARK took no part in the consideration or decision in this proceeding.

Mr. JUSTICE JACKSON, whom Mr. JUSTICE BLACK, Mr. JUSTICE FRANKFURTER and Mr. JUSTICE DOUGLAS join, delivered the following opinion.

This proceeding to disbar Abraham J. Isserman results from his being adjudged guilty of contemptuous conduct in the trial of *United States* v. *Dennis,* 183 F. 2d 201, 341 U. S. 494. The trial judge found that his con-

---

record, federal, state or territorial." Rule 5 (b), District Court for the Southern District of New York.

[9] *In re Isserman,* 9 N. J. 269, 279, 87 A. 2d 903, 907 (1952).

[10] *Ibid.*

[11] Rule 2, par. 2, and the application form for admission did not require information as to prior suspensions at the time Isserman was admitted. Such information is now required by Rule 2, par. 2.

temptuous acts were pursuant to a conspiracy among counsel to obstruct justice and sentenced him, with others, to jail. But the Court of Appeals, while affirming the counts charging specific acts of contempt, reversed the conspiracy count. *United States* v. *Sacher,* 182 F. 2d 416. This Court limited its review to questions of law and affirmed. *Sacher* v. *United States,* 343 U. S. 1.

Disciplinary proceedings were instituted before the United States District Court for the Southern District of New York, in which Isserman was given a full hearing, and again the conspiracy charge was not sustained. A period of suspension from practice at the bar of the court against which the contempt was committed was considered adequate to the offense. However, the courts of New Jersey have disbarred Isserman and under our rule he must be disbarred here unless he shows good cause to the contrary.[1]

While we have expressed different views as to the merits of the contempt charges, and each adheres to his former expressions, we are agreed that there is good cause for withholding this Court's decree of disbarment.

Primarily because of these contempts, the Supreme Court of New Jersey disbarred Isserman. It also considered his conviction in that State of statutory rape in 1925. At the time of conviction, however, the New Jersey courts found such extenuating circumstances that only a small fine and a temporary suspension from practice were

---

[1] Rule 2, par. 5, reads:

"Where it is shown to the court that any member of its bar has been disbarred from practice in any State, Territory, District, or Insular Possession, or has been guilty of conduct unbecoming a member of the bar of this court, he will be forthwith suspended from practice before this court, and unless, upon notice mailed to him at the address shown in the clerk's records and to the clerk of the highest court of the State, Territory, District or Insular Possession, to which he belongs, he shows good cause to the contrary within forty days he will be disbarred."

deemed to make the punishment fit the crime.[2] Five years after this conviction, this Court, asking no question which would have called for disclosure of the conviction, admitted Isserman to its bar, it appearing that he was then in good standing before the courts of New Jersey. Under these circumstances, we do not think we can now attach any weight to this dereliction.

We think this Court should not accept for itself a doctrine that conviction of contempt *per se* is ground for a disbarment. It formerly held, in an opinion by Mr. Chief Justice Marshall, that a lawyer should be admitted to this bar even though for contempt he had been disbarred by a federal district court action—". . . one which the court do not mean to say was not done for sufficient cause, or that it is not one of a serious character; but this court does not consider itself authorised to punish here for contempts which may have been committed in that court." *Ex parte Tillinghast,* 4 Pet. 108, 109. The remedy for courtroom contempt should be prompt and direct punishment proportioned to the offense. Isserman has been severely punished. His penalty has included what is rare in the punishment of lawyers' contempts—a substantial jail sentence.

We do not recall any previous instance, though not venturing to assert that there is none, where a lawyer has been disbarred by any court of the United States or of a state merely because he had been convicted of a contempt.[3] But we do know of occasions when members of the bar have been found guilty of serious contempt without their standing at the bar being brought into question.

---

[2] *In re Isserman,* 6 N. J. Misc. 146.

[3] In the trial of John Peter Zenger, in 1735, the Supreme Court of Judicature for the Province of New-York disbarred two of his defense counsel for "having presumed (notwithstanding they were forewarned by the Court of their DISPLEASURE if they should do it) to sign" and file a document questioning legality of the Judges'

It will sufficiently illustrate the point to refer to the tactics of counsel for the defense of William M. Tweed. Those eminent lawyers deliberately and in concert made an attack upon the qualifications of Presiding Judge Noah Davis, charging him with bias and prejudice. At the end of that trial, after he had pronounced sentence on Tweed, Judge Davis declared several defense counsel guilty of contempt. Not one of these lawyers, apparently, was subjected to disciplinary proceedings in consequence of that judgment. Among them were Elihu Root, later to become one of the most respected of American lawyer-statesmen, and Willard Bartlett, destined to become Chief Judge of the New York Court of Appeals. These two were excused from any penalty, beyond a lecture on their ethics, on the ground of youth and domination by their seniors—a rebuke perhaps more humiliating than a sentence.[4] One of the seniors who participated in the contempt, and certainly one of its chief architects, was David Dudley Field. He later was elected president of the American Bar Association.[5]

There has been hue and cry both for and against these lawyers for Communist defendants. There are those who think the respectability of the bar requires their expulsion. There are those who lament that any punishment of their conduct will so frighten the legal profession that it will not dare to discharge its duty to clients. We make common cause with neither. In defending the accused Communists, these men were performing a legitimate function of the legal profession, which is under a duty to leave no man without a defender when he is charged with

Commissions, which was adjudged to be a contempt for which they were peremptorily excluded from further practice and their names struck from the roll of attorneys. Rutherford, John Peter Zenger, 50; 17 How. St. Tr. 683, 686.

[4] Jessup, Elihu Root, 80–93.

[5] Rogers, American Bar Leaders, 50.

crime. In performing that duty, it has been adjudged that they went beyond bounds that are tolerable even in our adversary system. For this, Isserman has paid a heavy penalty.

If the purpose of disciplinary proceedings be correction of the delinquent, the courts defeat the purpose by ruining him whom they would reform. If the purpose be to deter others, disbarment is belated and superfluous, for what lawyer would not find deterrent enough in the jail sentence, the two-year suspension from the bar of the United States District Court, and the disapproval of his profession? If the disbarment rests, not on these specific proven offenses, but on atmospheric considerations of general undesirability and Communistic leanings or affiliation, these have not been charged and he has had no chance to meet them. We cannot take judicial notice of them. On the occasions when Isserman has been before this Court, or before an individual Justice, his conduct has been unexceptionable and his professional ability considerable.

We would have a different case here if the record stood that Isserman, with others, entered into a deliberate conspiracy or plans to obstruct justice. But that charge has been found by the Court of Appeals to lack support in the evidence, and again in the disciplinary proceeding in District Court it was not found to be proven. What remains is a finding that he was guilty of several unplanned contumacious outbursts during a long and bitter trial.

Perhaps consciousness of our own short patience makes us unduly considerate of the failing tempers of others of our contentious craft. But to permanently and wholly deprive one of his profession at Isserman's time of life, and after he has paid so dearly for his fault, impresses us as a severity which will serve no useful purpose for the bar, the court or the delinquent.