### IN THE MATTER OF ABRAHAM J. ISSERMAN, PETITIONER.

Argued May 9, 1961—Decided June 30, 1961.

*Mr. John O. Bigelow* and *Mr. Milton M. Unger* argued the cause for petitioner (*Messrs. Milton M. and Adrian M. Unger,* attorneys; *Mr. Basil R. Pollitt,* of the New York Bar, of counsel).

*Mr. Frederick C. Waldron* argued the cause for the Essex County Ethics Committee (*Mr. Frederick C. Vonhof,* of counsel).

The opinion of the court was delivered by

WEINTRAUB, C. J. Petitioner represented one of 11 Communist Party leaders in their trial in the United States District Court for the Southern District of New York for violation of the Smith Act, 18 *U. S. C. A.* § 2385. See *Dennis v. United States,* 341 *U. S.* 494, 71 *S. Ct.* 857, 95 *L. Ed.* 1137 (1951). At the end of the trial, the presiding judge signed a certificate adjudging petitioner and other counsel guilty of contempt. *United States v. Sacher,* 9 *F. R. D.* 394 (*D. C. S. D. N. Y.* 1949). Petitioner was

sentenced to a term of four months. His conviction was affirmed except as to the charge that he and the other respondents had conspired to commit the acts with which they were severally charged in the remaining specifications. *United States v. Sacher,* 182 *F.* 2d 416 (2 *Cir.* 1950), affirmed, 343 *U. S.* 1, 72 *S. Ct.* 451, 96 *L. Ed.* 717 (1952). The affirmances in the Court of Appeals and the United States Supreme Court were by divided votes, the lines of cleavage being the procedural questions whether the trial judge should himself have decided the contempt charge and properly refused to afford a hearing.

At that stage, our court disbarred petitioner. *In re Isserman,* 9 *N. J.* 269 (1952), rehearing denied, 9 *N. J.* 316 (1952). Now before us is his application for reinstatement.

## I.

In essence, the petition claims disbarment was too harsh a judgment and seeks a reappraisal. Such petitions rarely succeed. The reason is that we disbar only if thoroughly convinced the misconduct reveals a lack of the required trust and responsibility. None of us sat in the earlier proceeding, but our predecessors were no less sensitive to the awesome impact of a final severance. Judges of course disagree, and the view of a single judge may indeed change with time. But in the nature of things there cannot be a routine of re-evaluation of disciplinary matters. Ordinarily we should entertain an application only upon a showing of impressive circumstances unknown to the judges who rendered the verdict.

We are satisfied this case meets the standard we have described. Specifically, we refer to events which occurred after this court's judgment was entered and which seriously question the justice of it.

Isserman sought a review of our judgment by the United States Supreme Court. *Certiorari* was denied, *Isserman v. Ethics Committee,* 345 *U. S.* 927, 73 *S. Ct.* 706, 97 *L. Ed.*

1357 (1953), but two justices voted to grant, saying our court denied due process by accepting the certificate of the trial judge without affording Isserman "an opportunity to confront his accusers and present evidence to deny, explain or extenuate the charges against him."

Three days later the United States Supreme Court decided its own proceeding to disbar Isserman. The then rule of that court provided that an attorney disbarred from practice in any state shall be disbarred unless "he shows good cause to the contrary." Isserman's disbarment was ordered by a vote of 4 to 4. *Re Isserman*, 345 *U. S.* 286, 73 *S. Ct.* 676, 97 *L. Ed.* 1013 (1953). After pointing out that the Federal Supreme Court does not conduct its own examinations but rather depends upon the state authorities, the opinion supporting the order concluded Isserman failed to sustain the burden placed upon him by the rule. Four members of the court found he had. Stating they should not accept "a doctrine that conviction of contempt *per se* is ground for a disbarment" (345 *U. S.*, at p. 292, 73 *S. Ct.*, at p. 679, 97 *L. Ed.*, at p. 1018), they went behind the conviction and summed up the case in these words (345 *U. S.*, at p. 294, 73 *S. Ct.*, at p. 680, 97 *L. Ed.*, at p. 1019):

> "We would have a different case here if the record stood that Isserman, with others, entered into a deliberate conspiracy or plans to obstruct justice. But that charge has been found by the Court of Appeals to lack support in the evidence, and again in the disciplinary proceeding in District Court it was not found to be proven. What remains is a finding that he was guilty of several unplanned contumacious outbursts during a long and bitter trial.
>
> Perhaps consciousness of our own short patience makes us unduly considerate of the failing tempers of others of our contentious craft. But to permanently and wholly deprive one of his profession at Isserman's time of life, and after he has paid so dearly for his fault, impresses us as a severity which will serve no useful purpose for the bar, the court or the delinquent."

Subsequently the United States Supreme Court amended its rule to provide that a disbarment shall not be ordered except on a concurrence of a majority of the justices participating.

Isserman thereupon applied for a rehearing which was granted. The court being evenly divided, the order for disbarment was set aside and the rule to show cause discharged. *Re Isserman*, 348 *U. S.* 1, 75 *S. Ct.* 6, 99 *L. Ed.* 3 (1954).

Harold Sacher, also a defense counsel in the *Dennis* case, was adjudged guilty of contempt and sentenced to a term of six months. His conduct quite plainly was more grievous than Isserman's. The District Court disbarred Sacher and the Court of Appeals affirmed by a vote of 2 to 1. The United States Supreme Court, however, reversed by a vote of 6 to 2, finding that "permanent disbarment in this case is unnecessarily severe." *Sacher v. Association of the Bar of City of New York*, 347 *U. S.* 388, 389, 74 *S. Ct.* 569, 98 *L. Ed.* 790, 792 (1954).

Finally we refer to *Association of the Bar of the City of New York v. Isserman*, 271 *F.* 2d 784 (2 *Cir.* 1959). Involved were proceedings to disbar Isserman from practice in the United States District Court. It there appears that Judge Hincks had ordered Isserman suspended for two years while adjudging that Sacher be disbarred. As noted immediately above, Sacher's disbarment was reversed. Isserman too had appealed but did not press his appeal after a new proceeding was instituted for disbarment on the basis of the action of our court which occurred in the meantime. This new proceeding led to an order for disbarment. Upon appeal, the court reversed and dismissed the proceeding by a vote of 2 to 1. The majority opinion reads in part (at p. 785):

"* * * Making the thorough examination of the record which these cases require us to undertake, we are constrained to conclude that Judge Hincks's very careful and precisely buttressed judgment marks the extent of the punishment appropriate for this appellant. Indeed, the two-year suspension of Isserman ordered by Judge Hincks cannot be considered other than severe, particularly in comparison with the actions of Sacher, whose disbarment was found oversevere by the Supreme Court. On the record Isserman's derelictions seem comparatively mild, justifying four justices

of the Supreme Court in their statement, 'What remains is a finding that he was guilty of several unplanned contumacious outbursts during a long and bitter trial.' *In re Disbarment of Isserman, supra,* 345 *U. S.* 286, 294, 73 *S. Ct.* 676, 680, 97 *L. Ed.* 1013. Hence the two-year suspension should have marked the ending of his punishment. In actuality he has undergone practical suspension for nearly ten years since the close of the Dennis trial. No other of the five attorneys in the case has been disbarred or suspended. Thus the punishment visited on Isserman appears discriminatorily severe and should now be terminated."

■ Thus two incongruities have emerged. The first is that other courts refused to disbar Isserman notwithstanding disbarment in his home state. The second is that Isserman, whose misconduct was relatively of smaller dimensions, is the only attorney in the *Dennis* case who suffered the extreme disciplinary sanction. These events persuasively indicate we should reconsider the matter.

## II.

■ Although contempt convictions are criminal in nature, *Department of Health v. Roselle,* 34 *N. J.* 331 (1961), they cover a gamut of misdeeds embracing on the lower side conduct which "should be equated with a petty offense as that term is understood in the legal art," *In re Mattera,* 34 *N. J.* 259, 272 (1961). Hence in a disbarment proceeding based upon contempt, it is peculiarly appropriate to look behind the conviction to assay the conduct involved.

■ We are aided by the views of the trial judge in the *Dennis* case. In the contempt certificate he said (9 *F. R. D.,* at *p.* 395):

"By way of preliminary, I may say that I would have overlooked or at most merely reprimanded counsel for conduct which appeared to be the result of the heat of controversy or of that zeal in the defense of a client or in one's own defense which might understandably have caused one to overstep the bounds of strict propriety. Before the trial had progressed very far, however, I was reluctantly forced to the conclusion that the acts and statements to which I am about to refer were the result of an agreement between these defendants, deliberately entered into in a cold and calculating

manner, to do and say these things for the purpose of: (1) causing such delay and confusion as to make it impossible to go on with the trial; (2) provoking incidents which they intended would result in a mistrial; and (3) impairing my health so that the trial could not continue."

The charge of the trial judge that counsel had conspired to achieve the ends he recited was later adjudged to be unsupported. Although the conviction was nonetheless upheld upon the basis of the particular acts specified, still in determining whether those acts evidence unfitness for continued membership at the bar, we cannot ignore the statement of the trial judge that he would have overlooked the incidents or merely reprimanded but for his view that a deliberate plan lay beneath it all. If the finding of conspiracy is excised as it must be, Isserman's contempt, although such it was, does not warrant disbarment. We agree with the appraisal quoted above that at most "he was guilty of several unplanned contumacious outbursts during a long and bitter trial." Isserman has carried the stigma of disbarment for nine years. We are convinced this is more than enough.

The petition for reinstatement was referred to the Ethics Committee, which fully explored Isserman's activities during the intervening years. Nothing unfavorable appeared. We have considered whether he should be required to take another bar examination. We think he should not. He is a seasoned lawyer of wide experience. It is unnecessary and would smack of further discipline to require him to rerun the course of a neophyte.

The petition for reinstatement is granted, to become effective upon a filing by Isserman with the clerk of this court of an affidavit that he has resumed a domicile in this State.

*For granting*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For denial*—None.