**In re the Matter of Disbarment Proceedings Against Z. T. OSBORN, Jr. From Practice in the United States District Court For the Middle District of Tennessee.**

**Z. T. Osborn, Jr., Appellant.**

**No. 15758.**

United States Court of Appeals
Sixth Circuit.
May 2, 1967.

Jay G. Stephenson, Nashville, Tenn. (Jack Norman, Sr., Nashville, Tenn., on the brief), for appellant.

Nathan Lewin, Dept. of Justice, Washington, D. C. (Herbert J. Miller, Jr., Asst. Atty. Gen., Robert S. Erdahl, Philip R. Monahan, Attys., Dept. of Justice, Washington, D. C., on the brief), for the United States, amicus curiae.

Cooper Turner, Jr., Memphis, Tenn., Frank N. Bratton, Athens, Tenn., J. O. Bass, Nashville, Tenn., on brief for Bar Ass'n of State of Tennessee, amicus curiae.

Before WEICK, Chief Judge, O'SULLIVAN, Circuit Judge, and CECIL, Senior Circuit Judge.

PER CURIAM.

This appeal is from an order of the District Court signed by its two Judges, striking the name of Appellant, Z. T. Osborn, Jr., from the roll of attorneys of the Court. Briefs amici curiae were filed, with leave of Court, by the United States and the Bar Association of the State of Tennessee. The case was argued by counsel for the Government and by one of Osborn's attorneys.

On November 15, 1963 an order was issued by the District Court reciting that it had substantial and plausible information that Osborn, an attorney of the court, did improperly attempt to influence one, Ralph A. Elliott, a member of the petit jury panel (sworn on October 14, 1963) in his verdict in the case of United States v. Hoffa, et al, Criminal No. 13383, should he ultimately be seated as a juror in that case, and ordering Osborn to appear before the Court on November 25, 1963 and show cause why his name should not be stricken from the roll of attorneys and he be disbarred and prohibited from practicing in the Court.

At the request of Osborn the date of hearing was advanced to November 19. The hearing was conducted in the chambers of the Court in order to protect Osborn from adverse publicity should he be exonerated from the charge.

Evidence in support of the disbarment was given by Robert D. Vick, a Nashville policeman, who had been hired by Osborn, one of Hoffa's attorneys, to make a background investigation of members of the jury panel from which the petit jurors in the forthcoming trial of the Hoffa case were to be selected. Vick's evidence was corroborated by a tape recording of his conversation with Osborn in the course of which Vick was engaged by Osborn to make contact with Elliott to influence his verdict in the event he was seated as a juror. There was additional corroborating evidence, including an admission made by Osborn at the hearing that the tape correctly recorded the conversation.

At the disbarment hearing Osborn claimed that he was a victim of entrapment. The District Court was not persuaded by this contention, as it did not believe that Osborn, who was an able trial lawyer with many years of experi-

810

ence, including that of City Attorney of Nashville and Assistant United States Attorney for the Middle District of Tennessee, would be susceptible to this kind of enticement by a policeman, and if he were, he was not fit to practice law. We agree.

Osborn argued before us that his constitutional rights were invaded by the use of an informer with a recording device.

Osborn's contentions with respect to entrapment, the informer, and the tape recorder, were considered and rejected by the Supreme Court in Osborn v. United States, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966), rehearing denied February 20, 1967, affirming 350 F.2d 497 (6th Cir. 1965). In that case, the Supreme Court reviewed and affirmed Osborn's conviction for the crime of jury tampering.

One other point remains to be considered. Osborn contended that he did not have a fair and impartial hearing because the District Court had instituted and heard the disbarment proceeding and had previously authorized the F.B.I. to use the recording device when information concerning the jury tampering had been brought to the Court's attention.

It is significant that this contention was not made at the disbarment hearing, and was raised for the first time in the motion for a new trial.

■ There can be no question of the inherent power of a court "to protect itself, and hence society, as an instrument of justice." In re Isserman, 345 U.S. 286, 289, 73 S.Ct. 676, 677, 97 L.Ed. 1013 (1952). Conduct of an officer of the court, of the type involved here, strikes at the foundation of justice. It fosters mistrust by the public and impairs confidence in judicial administration. It tends to bring the courts into disrepute. There was nothing wrong or unusual, in a disbarment proceeding, in the Court's hearing the charges which it preferred. As well stated by Chief Judge Cardozo in People ex rel. Karlin v. Culkin, 248 N.Y. 465, 162 N.E. 487, at 492, 60 A.L.R. 851 at 492:

"The power of the court in the discipline of its officers is in truth a dual one. It prefers the charges, and determines them."

The Supreme Court in Ex parte Wall, 107 U.S. 265, 2 S.Ct. 569, 27 L.Ed. 552 (1882) stated that a disbarment proceeding "is not for the purpose of punishment, but for the purpose of preserving the courts of justice from the official ministration of persons unfit to practice in them" (page 288, 2 S.Ct. page 589).

When information had been brought to the attention of the District Judges concerning Osborn's jury tampering activity, they did not want to take any action as they had only the unsupported affidavit of Vick, and Osborn was a respected member of the bar. They authorized use of the tape recorder by the F.B.I. only to determine whether Vick's statements were true, as it turned out, they were true by Osborn's own admission.

The fact that a Judge may authorize the issuance of a search warrant upon a showing of probable cause, does not disqualify him from later hearing the case. Proceedings in criminal contempt, conducted by a Judge, are also analogous. Ungar v. Sarafite, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964).

■ In our opinion the Judges were not disqualified from hearing the disbarment proceeding.

■ The disbarment proceeding was fairly and properly conducted. Osborn was given due notice of the charge and ample opportunity to defend himself, with counsel. He chose not to cross-examine a single witness. He offered no evidence except his own statements. He relied on his entrapment defense, which was refuted by the record. We find no merit in his appeal.

Affirmed.