Jerome SILVERMAN, as Administrator
of the Estate of Harold Nathan, and
Adele Nathan, Plaintiffs,

v.

Louis D. BROWNING et al., Defendants.

Civ. No. B–259.

United States District Court,
D. Connecticut.

April 30, 1976.

Alfred S. Julien, New York City, Marshall S. Feingold, Hartford, Conn., for plaintiffs.

Henry J. Lyons, Dion W. Moore, Bridgeport, Conn., for defendant, Louis D. Browning.

Pullman, Comley, Bradley & Reeves, Frederick U. Conard, Jr., Shipman & Goodwin, Hartford, Conn., for Connecticut Bar Association.

Carl R. Ajello, Atty. Gen. and Barney Lapp, Asst. Atty. Gen., Hartford, Conn., for Hon. John J. P. Ryan, Hon. Otto H. La Macchia and all Judges of Superior Court.

Arnold J. Bai, Paul E. Pollock, Goldstein & Peck, Bridgeport, Conn., for defendant, John J. Cloonan.

Before SMITH, Circuit Judge, and CLARIE and NEWMAN, District Judges.

## MEMORANDUM OF DECISION

CLARIE, District Judge:

█ The plaintiff[1] seeks a judgment declaring that the state court *pro hac vice* attorney admission rule, (§ 15A of the Connecticut Practice Book), is unconstitutional and void, because it is in violation of the equal protection clause of the Federal Constitution. He requests injunctive relief against the Connecticut Superior Court Judges requiring one of them to admit the plaintiff's attorney, who is a member in good standing of the New York State Bar, to appear and try two pending malpractice suits in the State Superior Court of Fairfield County, at Stamford.

The defendants have moved to dismiss the action for failure to state a claim upon which relief can be granted and for lack of jurisdiction over the subject matter. Plaintiff brings this action under the civil rights act, 42 U.S.C. § 1983, and its jurisdictional counterpart, 28 U.S.C. § 1343(3), and also alleges federal question jurisdiction pursuant to 28 U.S.C. § 1331, based upon alleged violations of the fifth, sixth and fourteenth amendments.

### Facts

To adequately understand the issues, it is necessary to have a perspective of the background of this litigation. Therefore, the Court will summarily review what has transpired in this case to date. In May 1968, Attorney Alfred S. Julien, a New York medical malpractice specialist, was retained to prosecute two wrongful death actions for alleged malpractice and negligence, against a Stamford, Connecticut, hospital and associated medical personnel, who had attended and furnished professional care to Harold Nathan, the plaintiff's decedent. The original suits were commenced in the Connecticut Superior Court by a local attorney and it was generally understood that Connecti-

---

1. The record discloses that the named plaintiff Jerome Silverman, the administrator of the Estate of Harold Nathan, resigned as administrator in April 1972, during the pendency of this action, and that Nathan's widow, Adele Na- than, succeeded Silverman as administratrix, and in that capacity was substituted as successor plaintiff. Since the record retains the original title of the case, the Court will conform to that usage.

cut counsel would continue to assist out-of-state specialist counsel and be present at the trial. In October 1968, then Superior Court Judge Bogdanski (now a Justice of the Connecticut Supreme Court), over defendants' objection, authorized Attorney Julien to take pre-trial depositions of the defendants. At that time, however, Judge Bogdanski alerted counsel to the fact that he doubted the state court would permit Attorney Julien to try the case, but that the question would not be decided until the time of trial.

In May 1969, the defendants in the state suit sought a state court injunction restraining the plaintiff's out-of-state attorney from assisting or aiding other counsel at the taking of the defendants' depositions, until he had complied with the rules of the Connecticut Practice Book and the Connecticut General Statutes relating to the admission of out-of-state attorneys. After a hearing before Judge Tierney, the court granted injunctive relief and entered an order prohibiting Attorney Julien from participating or assisting in the pre-trial preparation of the case or the trial, until he had complied with the rules and statutes pertaining to the admission of out-of-state attorneys. On November 20, 1970, local counsel again moved that Attorney Julien be permitted to conduct the trial and Superior Court Judge La Macchia denied that motion.

In March 1971, the plaintiff initiated this federal action to restrain the state court judges and the Superior Court clerk in Fairfield County from continuing a policy and practice which would prevent the plaintiff from exercising his claimed constitutional rights to a free choice of counsel, by denying him the right to have his retained out-of-state counsel try his case as counsel in charge, with a Connecticut attorney present. At the initial hearing before a single judge, this Court found that no uniform rule existed for the admission of *pro hac vice* out-of-state counsel. It ruled further that the existing custom and practice was subject to the whim and fancy of the judge who happened to be presiding at the

time; and that such an arbitrary "non-system rule" was likely to violate a litigant's right to equal protection under the fourteenth amendment to the Federal Constitution.

This Court held that justice and comity required that the State of Connecticut should be afforded a reasonable opportunity to establish an objective rule or benchmark, to clearly set out the rules governing the admission of out-of-state attorneys to practice *pro hac vice* in Connecticut courts. Counsel agreed to a temporary stay order, delaying the trial of the state court malpractice actions, until the issue concerning choice of counsel could be resolved. See 359 F.Supp. 173, 174–5.

On June 21, 1971, the State Superior Court judges enacted a new *pro hac vice* rule, § 15A of the Connecticut Practice Book, which provides as follows:

"An attorney who is in good standing at the bar of another state, the District of Columbia, or the commonwealth of Puerto Rico, may, upon special and infrequent occasion and *for good cause shown* upon written application presented by a member of the bar of this state, be permitted *in the discretion of the court* to participate to such extent as the court may prescribe in the presentation of a cause or appeal in any court of this state; provided, however, that a member of the bar of this state must be present at all proceedings and must sign all pleadings, briefs and other papers filed with the court and assume full responsibility for them and for the conduct of the cause and of the attorney to whom such privilege is accorded. Where feasible, the application shall be made to the judge before whom such cause is likely to be tried. Good cause for according such privilege shall be limited to facts or circumstances affecting the personal or financial welfare of the client and not the attorney. Such facts may include a showing that by reason of a long standing attorney-client relationship predating the cause of action or subject matter of the litigation at bar, the attorney has acquired a specialized

skill or knowledge with respect to the client's affairs important to the trial of the cause, or that the litigant is unable to secure the services of Connecticut counsel." (Emphasis added).

Upon the adoption of this new rule, the defendants moved to dismiss the federal action. The plaintiff claimed, however, that the new rule was also unconstitutional, because the showing of "good cause" as required by the rule had no rational connection with the out-of-state attorney's moral fitness or general capacity to practice law and that these were the only permissible criteria laid down in *Schware v. Board of Bar Examiners,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). This Court denied the defendants' motion to dismiss and directed that the plaintiff proceed to have his state application for admission *pro hac vice* considered under the newly amended state admission rule.

The plaintiff's counsel renewed his motion for admission of out-of-state counsel and it was again denied after a hearing by the state trial judge pursuant to the new rule. The plaintiff then moved for the convening of a three-judge constitutional court and requested that it declare the *pro hac vice* rule unconstitutional on its face and as applied to plaintiff's out-of-state counsel, and enjoin its enforcement. After a full hearing, a majority of the three-judge constitutional court voted to abstain from deciding the constitutional questions presented, so that the State Supreme Court might be afforded the first opportunity to determine the proper construction of its own newly amended rule. This Court's instructions did not specify that only the statutory construction issue should be submitted to the State Supreme Court, or restrict the plaintiff from advancing his constitutional claims in that forum. The Court retained

jurisdiction of the case pending the appeal, however, not as an appellate review court, but solely as a precaution in case the appeal was dismissed as time-barred, or if the State Supreme Court elected to avoid deciding any constitutional issues which were presented to it. *See Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) and *Government Employees v. Windsor,* 353 U.S. 364, 366, 77 S.Ct. 838, 839, 1 L.Ed.2d 894, 896 (1957).

However, the plaintiff did not accept this Court's abstention, but appealed directly to the United States Supreme Court, which affirmed the abstention judgment of the three-judge court. 411 U.S. 941, 93 S.Ct. 1927, 36 L.Ed.2d 406. The case was then presented and argued before the Connecticut Supreme Court, which construed the term "good cause" as set out in the statute, not to enumerate the exclusive reasons for a finding of good cause. However, in a 4–1 decision, the Court did find that the State Superior Court was correct in concluding that the plaintiff's counsel had not assumed his minimal burden of presenting sufficient factual evidence to show "good cause" under the statutory requirements.[2] 168 Conn. 160, 363 A.2d 22 (1975) and 37 Conn.L.J. (No. 1, July 1, 1975). The one dissenting Justice, Bogdanski, would have ordered a remand of the case to the state trial court for a hearing, so that a proper factual record could be developed, upon which a basis could be established to make relevant factual findings.

The plaintiff filed no petition for certiorari nor did he seek direct review in the United States Supreme Court. Rather, the matter was renewed before this Court, under color of the Court's original order, wherein it retained jurisdiction, pending the final determination of the issues in the state's highest court.

2. "It then found that the plaintiff made no showing that the application was 'a special or infrequent occasion,' that the only reason given by the plaintiff in open court on the hearing on the application was that the plaintiff 'desired' Julien to represent him, that no factual showing was made by the plaintiff at the hearing that Julien's representation would affect the

personal or financial welfare of his client, that no showing was made at the hearing that the litigant was unable to secure the services of competent Connecticut counsel to try the case, and that the plaintiff failed to establish good cause under § 15A of the Practice Book." 168 Conn. 160, 174–175, 363 A.2d 22 (1975).

**84**

*Issues*

1. Does the plaintiff have the right to return to this Court for an adjudication of his federal claims, after failing to request final appellate review through an appeal to the United States Supreme Court; and

2. Assuming jurisdiction does exist, whether § 15A of the Connecticut Practice Book, so interferes with the plaintiff's right to the selection and effective assistance of legal counsel of his choice, that it is in conflict with the equal protection, the due process and the privileges and immunities clauses of the fourteenth amendment.

*Jurisdiction*

When the plaintiff briefed his appeal to the Connecticut Supreme Court and argued the case, he included federal constitutional issues of due process and equal protection. He represented the foregoing issues of law to be major premises in his appellate brief and intended them to be before the State Supreme Court for adjudication. However, that court simply ruled that on the evidentiary record before it, as set out in the findings of the lower trial court, the plaintiff had not sustained his factual burden of proof of establishing the statutory prerequisites for admission. The State Supreme Court declined to review and consider the questions of constitutional law sought to be raised in the appeal, because none of these questions on which the plaintiff sought adjudication had been first presented and placed in issue at the trial court. Therefore, the State Supreme Court ruled that they were not properly before it pursuant to the requirements of § 223 of the Connecticut Practice Book.

Consequently, notwithstanding the fact that the plaintiff submitted his federal claims to the State Supreme Court to be litigated and in fact argued them to that court, since the latter declined to consider and decide those issues on their merits, it cannot be found that the plaintiff is bound by a final adjudication of those federal questions in the state court. However, had he submitted the constitutional issues to the State Supreme Court without reser-vation, and had that Court decided them, whether or not the plaintiff later sought direct review of the state decision in the United States Supreme Court, he might have been considered to have waived any right to return to the District Court, as a matter of law.

"The three-judge Federal District Court retained jurisdiction of this case while an authoritative construction of Chapters 33 and 36 was being sought in the Virginia courts. . . . The question of our jurisdiction arises because, when the case was last here, we observed that such abstention to secure state court interpretation 'does not, of course, involve the abdication [by the District Court] of federal jurisdiction, but only the postponement of its exercise . . . .' *Harrison v. NAACP,* 360 U.S. 167, 177 [79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152]. We meant simply that the District Court had properly retained jurisdiction, since a party had the right to return to the District Court, after obtaining the authoritative state court construction for which the court abstained, for a final determination of his claim. Where, however, the party remitted to the state courts elects to seek a complete and final adjudication of his rights in the state courts, the District Court's reservation of jurisdiction is purely formal, and does not impair our jurisdiction to review directly an otherwise final state court judgment." *N. A. A. C. P. v. Button,* 371 U.S. 415, 427, 83 S.Ct. 328, 335, 9 L.Ed.2d 405, 414 (1963).

The foregoing principles were reiterated and enlarged upon by the Court in *England v. Medical Examiners,* 375 U.S. 411, 419, 84 S.Ct. 461, 467, 11 L.Ed.2d 440, 447 (1964), where the Court said:

"We now explicitly hold that if a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there, *and has them decided there,* then—whether or not he seeks direct review of the state decision in this Court—he has elected to forgo his right to return to the District Court." (Emphasis added).

Therefore, the Court finds that in light of the state court's action in not passing upon the constitutional issues, the plaintiff is not foreclosed from returning to this Court for the presentation of the federal issues for final review; and such procedure does not contravene the provisions of 28 U.S.C. § 1257.

*Merits*

The basic issue in this case is whether the new § 15A of the Practice Book, governing the admission of out-of-state attorneys *pro hac vice,* violates the plaintiff's right to select counsel of his choice. In other words, does the rule so restrict his choice of competent specialist counsel in the malpractice field, that his rights to equal protection and due process and his rights under the privileges and immunities clause of the fourteenth amendment are materially impaired.

The Supreme Court has commented on the subject, but has not defined with particularity the constitutional requirements governing the choice of counsel in civil cases. In *Powell v. Alabama,* the Court said:

"If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense." 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158, 170 (1932).

The issues to be litigated in the present state court action, wherein the plaintiff desires out-of-state counsel to represent him, do not involve a federal question, nor is it a suit authorized by the Congress to effectuate a basic public interest. The rules of law protecting the public from medical malpractice are created by state statutes and court precedent. The defendants argue that the state has a legitimate interest in the conduct of such litigation in its courts, and that the state properly requires that the attorneys handling the litigation have competent knowledge of state law, procedural rules and state practice, and that the court have inherent disciplinary authority over them, to effectively maintain and enforce the standards of professional conduct required of all attorneys who practice before it. This primary authority to regulate the practice of law before the state courts has historically reposed in the states.

"In *Bradwell v. The State,* 16 Wall. 130, [21 L.Ed. 442], it was held that the right to practise law in the state courts was not a privilege or immunity of a citizen of the United States; that the right to control and regulate the granting of license to practise law in the courts of a State is one of those powers that was not transferred for its protection to the Federal government, and its exercise is in no manner governed or controlled by citizenship of the United States in the party seeking such license." *In Re Lockwood, Petitioner,* 154 U.S. 116, 14 S.Ct. 1082, 38 L.Ed. 929 (1893).

*Also see, In Re Isserman,* 345 U.S. 286, 287, 73 S.Ct. 676, 677, 97 L.Ed. 1013, 1015 (1953).

This principle was again affirmed and strengthened in *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572, 588 (1975), where the Court said:

"We recognize that the States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions. . . . The interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.' See *Sperry v. Florida ex rel. Florida Bar,* 373 U.S. 379, 383 [83 S.Ct. 1322, 1325, 10 L.Ed.2d 428] (1963); *Cohen v. Hurley,* 366 U.S. 117, 123–124 [81 S.Ct. 954, 958, 6 L.Ed.2d 156] (1961); *Law Students Research Council v. Wadmond,* 401 U.S. 154, 157 [91 S.Ct. 720, 723, 27 L.Ed.2d 749] (1971)."

State rules and regulations governing the practice of law are ultimately sub-

ject to the mandates of the United States Constitution. Thus, under exceptional circumstances, where civil rights issues have been involved, the Supreme Court has placed limitations upon the state's power to regulate the practice of law. *See N. A. A. C. P. v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); and *Brotherhood of Railroad Trainmen v. Virginia ex rel. Virginia State Bar,* 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964).

■ However, while the instant case has been awaiting final disposition in the state and federal courts, a new case concerning the same subject, *Norfolk and Western Railway Company v. Beatty,* 400 F.Supp. 234 (S.D.Ill.1975), was summarily affirmed by the United States Supreme Court on December 8, 1975. 423 U.S. 1009, 96 S.Ct. 439, 46 L.Ed.2d 381, 44 U.S.L.W. 3343. A summary affirmance by the highest court is binding upon this Court's decision in a like matter, provided the issues litigated and decided are substantially the same. In *Hicks v. Miranda,* 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223, 236 (1975), the Court said:

"A federal constitutional issue was properly presented, it was within our appellate jurisdiction under § 1257(2), and we had no discretion to refuse adjudication of the case on its merits as would have been true had the case been brought here under our certiorari jurisdiction. We were not obligated to grant the case plenary consideration, and we did not; but we were required to deal with its merits. We did so by concluding that the appeal should be dismissed because the constitutional challenge to the California statute was not a substantial one. The three-judge court was not free to disregard this pronouncement. As MR. JUSTICE BRENNAN once observed, '[v]otes to affirm summarily, and to dismiss for want of a substantial federal question, it hardly needs comment, *are votes on the merits of a case. . . .*' . . . compare . . . C. Wright, Law of Federal Courts 495 (2d ed. 1970) ('Summary disposition of an appeal, however, *either by affirmance* or by dismissal for want of a substantial federal question, is a disposition on the merits'). The District Court should have followed the Second Circuit's advice . . . in *Doe v. Hodgson,* 478 F.2d 537, 539 (CA 2), cert. denied *sub nom. Doe v. Brennan,* 414 U.S. 1096 [94 S.Ct. 732, 38 L.Ed.2d 555] (1973), [that] the lower courts are bound by summary decisions by this Court ' "until such time as the Court informs [them] that [they] are not." ' " (Emphasis added).

*Norfolk and Western, supra,* concerned two railroad companies and five barge line companies regularly operating equipment in the State of Illinois. They brought an action in the federal district court, alleging that for many years a substantial number of suits asserting rights under certain federal statutes—namely, The Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq.; The Safety Appliance Acts, 45 U.S.C. §§ 1–43; The Merchant Marine Act of 1920 as amended (The Jones Act), 46 U.S.C. § 688—had been regularly filed against them in the Illinois courts.

Under federal law, Norfolk and Western and the other defendant common carriers were subject to suit by their employees seeking recovery under federally created substantive rights for job-related injuries, in the courts of any state where the employer transacted business. These suits could not be removed thereafter to a federal court, 28 U.S.C. § 1445(a); and in most instances the defendant-employer was forced into a judicial forum which was not of his own choosing. In fact, in a large number of these actions, the accidents out of which the suit arose did not even occur within the State of Illinois. Accordingly, often the witnesses to the occurrence, the treating and examining physicians and the treating hospitals were located outside Illinois. All of the defendant common carriers were incorporated and their principal offices were in states other than Illinois. The only reason the suits could be brought in that jurisdiction was that the defendants operated their businesses in interstate commerce there. Prior to change in the Illinois

courts' application of their *pro hac vice* rule, these railroad and barge companies were regularly represented in the Illinois state courts by retained specialist counsel possessed of special knowledge and experience in admiralty and railroad law, but licensed to practice outside the State of Illinois. They appeared as co-counsel and participated with in-state counsel at all phases of the proceedings, including the actual trial.

A dispute arose when the state court judges struck from the list as trial attorneys, these specialist nonresident counsel and ordered the employer-defendants to retain Illinois licensed attorneys, who would be recognized by the court as the principal counsel to handle and try the case. The order did not totally bar out-of-state counsel from being associated in cases with local counsel, but only restricted their activity to a supporting, consulting, or advisory role at the trial.

The Norfolk and Western Railroad Company and its co-plaintiffs in the action resisted the restriction, claiming that because the rights involved had been federally created by statute, the state could not interfere with their selection of counsel and thus impede the vindication of federally protected rights. For the state to so interfere, they argued, and limit these common carriers in their choice of counsel, ran contrary to the federal Supremacy Clause of Article VI. They also argued that such state action impaired the rights created by federal law and violated the equal protection, due process and privileges and immunities clauses of the fourteenth amendment, as well as the commerce clause under Article I § 8, by laying an undue burden on interstate commerce. They claimed that these state restrictions were designed primarily to accomplish "a parochial desire to eliminate outside competition," and that they were not motivated by a vital and compelling state interest to maintain high standards of ethics and competency among those who practice law in the state courts. The case clearly raised the issue of whether or not a civil litigant's right to counsel was subject to restriction by state rules governing the practice of law in state courts.

In *Norfolk and Western Railway Company v. Beatty, supra,* 400 F.Supp. at 237, the three-judge constitutional court's opinion, which was later affirmed by the Supreme Court, said:

"The Illinois statute is not unreasonable. It is not a complete bar to out-of-state lawyers, but permits their full participation in isolated cases on a case-by-case determination."

" . . . To view it otherwise would be for this Court to create a limited federal or national bar and to impose it on the states. To do so would be in total disregard of the state's great interests in the control and supervision of the practice of law in its own courts through reasonable requirements for licensing and admission." (Footnote omitted).

It might be noted that the general tenor of that court's opinion strongly approved of the prior dissent by Smith, C. J., *see* 359 F.Supp. at 180, in the present case.

The *Norfolk and Western* decision might be distinguished from the present case on the theory that the Illinois rule did not completely bar out-of-state lawyers, whereas the Connecticut trial court's action in this case did. However, it should be pointed out, that the Connecticut Practice Rule, upon a proper showing, would have undoubtedly permitted the out-of-state counsel in the *Norfolk and Western* case to appear and try the case in Connecticut, merely because of clearly defined prior longstanding relationship. Compliance under the Connecticut rule could be accomplished by an evidentiary showing of "good cause," as defined in the State Supreme Court's opinion. The colloquy between counsel and the Connecticut trial court discloses that no adversary type of evidentiary presentation was ever made or attempted. Plaintiff's counsel appeared to presume that once Attorney Julien's name was presented with the request for admission, the trial court would automatically infer that his presence would confer benefits

upon his client which would legally constitute "good cause."

 The Court finds that the state courts do possess the inherent power to regulate who shall practice law before them; this is an essential authority to be exercised for the state court's own protection, as well as that of the litigants. While this Court might suggest a more liberal *pro hac vice* rule, those matters are for the state judiciary and not this Court. Absent proof of prejudice or abuse of discretion, the state courts must be presumed to act in good faith and with judicial wisdom, and must be permitted to exercise their regulatory powers freely. *See Norfolk and Western Railway Company v. Beatty, supra; Sperry v. Florida ex rel. Florida Bar,* 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963); and *Dandridge v. Williams,* 397 U.S. 471, 478, 90 S.Ct. 1153, 1158, 25 L.Ed.2d 491, 498 (1970).

The defendants' motion to dismiss the action for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), is granted and so ordered.

The foregoing opinion shall constitute the findings of fact and conclusions of law required to be filed by the Court, pursuant to Rule 52(a), Fed.R.Civ.P. SO ORDERED.

NEWMAN, District Judge (dissenting):

The Court rejects plaintiff's claim on the authority of the Supreme Court's affirmance of the three-judge court decision in *Norfolk and Western Railway Company v. Beatty,* 423 U.S. 1009, 96 S.Ct. 439, 46 L.Ed.2d 381, 44 U.S.L.W. 3343 (1975). With deference, I do not find that decision dispositive of the case before us. *Norfolk and Western* involved a constitutional challenge to a state practice rule which permitted out-of-state lawyers to participate "in isolated cases on a case-by-case determination." 400 F.Supp. at 237. The plaintiffs in that litigation thought the state could not limit their participation to such infrequent occasions. They were asserting the right to be represented by out-of-state counsel in all the F.E.L.A. cases pending against them in the state court. Our plaintiff desires out-of-state counsel in a single lawsuit. I can readily agree that the Constitution does not require a state court to permit out-of-state attorneys a right of regular appearance before the court, without qualifying for bar membership according to valid local rules. That is what *Norfolk and Western* decided. The issue before us is whether a state court that does permit out-of-state counsel to appear on infrequent occasion has in this instance rejected an application on grounds that deny the plaintiff client the equal protection of the laws.

The case has unfortunately become complicated by the prior course of proceedings both in this Court and in the Connecticut Supreme Court. The extent to which those proceedings are related and the extent to which they are not related must be clearly understood. The action of which the plaintiff complains in this Court was taken by a judge of the state Superior Court. That action, denying *pro hac vice* admission, was properly challenged in this Court. See *Silverman v. Browning,* 359 F.Supp. 173, 179–80 (D.Conn.1972) (concurring opinion).[1] Ul-

---

1. Arguably, the propriety of seeking relief from this Court during the pendency of the state court civil proceeding has been rendered in some doubt by the Supreme Court's limited extension of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), to civil proceedings. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). *Huffman* involved a civil proceeding closely analogous to a criminal action, a circumstance totally lacking in this litigation. Moreover, if denial of admission of an attorney *pro hac vice* denies a state court litigant his constitutional

rights, he faces uncertain vindication of those rights if he is limited to an appeal of the judgment ultimately obtained in the state court litigation. At that point, he might well be required to demonstrate prejudice by the denial of the attorney of his choice, although it is possible that an unconstitutional denial of the selected attorney would be grounds for reversal without speculative exploration of actual prejudice. In any event, *Huffman* has not extended *Younger* to all civil proceedings, and the ruling here challenged is sufficiently distinct from the routine conduct of the state court litigation to

timately this Court elected to abstain to afford the plaintiff an opportunity to obtain from the Connecticut Supreme Court a definitive construction of the out-of-state practice rule that might eliminate the federal constitutional issue. I did not think such construction would aid our resolution of the constitutional question, but agreed to abstention in order to effect a disposition of the case. 359 F.Supp. at 180. Normally, such abstention to seek clarification of state law propels the plaintiff into a new lawsuit in the state courts. Here, however, since the action being challenged in the federal suit had been taken by a state court trial judge in the course of pending litigation, the federal plaintiff sought to secure state court construction by appealing the state trial judge's decision. Though appeal at that point was untimely, the Connecticut Supreme Court agreed in the interests of expedition to entertain the appeal and ruled authoritatively that § 15A permits *pro hac vice* admission whenever good cause is shown, and not simply when the conditions illustrated in the Rule are satisfied. *Silverman v. St. Joseph's Hospital,* 168 Conn. 160, 179, 363 A.2d 22, 31 (1975).

Since the plaintiff did not reserve his federal question for subsequent determination by the federal court, his present claims would have been foreclosed from further litigation had the State Supreme Court ruled upon them. See *England v. Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). However, the State Supreme Court, though willing to hear the appeal out of time, felt obliged to invoke its rule precluding appellate consideration of issues not presented to the state trial court. To the extent this refusal to adjudicate the federal constitutional issue also rested on the pendency of this federal court action, see 168 Conn. at 168–169, 363 A.2d at 26, it represents an unfortunate misunderstanding of abstention and the *England* doctrine. A federal court abstains to afford the state courts an opportunity to decide state law issues, and if the federal court

warrant federal court inquiry pursuant to 42 U.S.C. § 1983. *Cf. Law Students Civil Rights Research Council, Inc. v. Wadmond,* 299

plaintiff does not reserve the federal questions, there is absolutely no federal reason for a state court to decline to adjudicate the entire controversy. Doing so in this litigation would have ended it one year ago.

In any event, the State Supreme Court declined to decide the federal question, and plaintiff is not foreclosed from returning to this Court. But it is important to bear in mind that he returns to resume the litigation that was interrupted by this Court's abstention; he does not bring before us for review any aspect of the decision of the State Supreme Court, as to which we have no appellate jurisdiction whatsoever. The only new ingredient in the lawsuit in this Court is the definitive construction of § 15A, a construction which, as I feared earlier, does not eliminate the constitutional question before us.

On the merits, I adhere to the views expressed previously, 359 F.Supp. at 177. Plaintiff's claim was rejected by the state Superior Court Judge for reasons that bear no rational relationship to any legitimate interests of the state in regulating the practice of law. The transcript of the proceedings in which the action here challenged was taken makes entirely clear the basis for the trial judge's action. He said he was denying the application because there had been no showing plaintiff had a long-standing relationship with the out-of-state counsel he had selected, nor that Connecticut counsel were not available. The fact that he issued findings nearly a year later purporting to reject the application for lack of an adequate showing of good cause cannot change the facts concerning what he did when he denied the application and what he said were the reasons for denying it. See *SEC v. Chenery,* 318 U.S. 80, 87–88, 63 S.Ct. 454, 459–460, 87 L.Ed. 626, 633–634 (1943). Were the record ambiguous, the subsequent findings might provide a basis for clarification, but the record made at the time is too clear for subsequent restructuring.

F.Supp. 117, 122 n.4 (S.D.N.Y.1969) (Friendly, J.).

**90**

For these reasons, and for those previously set forth, I would grant plaintiff the relief requested.