Petition of **MERRY QUEEN TRANSFER CORP.**, as owner of the **TANKSHIP VAL–T** for exoneration from or limitation of liability.
**Mary O'Rourke, Patrick O'Rourke, Priscilla O'Rourke, Claimants.**

**No. AD 20622.**

United States District Court
E. D. New York.
June 12, 1967.

See also D.C. 266 F.Supp. 605.

O'Dwyer & Bernstien, New York City, for claimants, Paul O'Dwyer, New York City, of counsel.

MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

This is an ex parte application by an attorney made "pursuant to Rule IV, subdivision 5(d)," of Part 3 of the Rules of the Appellate Division of the Second Department "and Civil Rule 15 of the Rules of this Court" fixing "compensation at

an amount greater than the sliding scale schedule contained in said Appellate Division Rules."

The application is accompanied by an affidavit of the attorney and written consent of the three clients involved, Mary O'Rourke, Patrick O'Rourke and Priscilla O'Rourke. Each of these clients is now of full age and, according to the attorney's affidavit, capable of understanding the nature of the application.

The total recovery of these three clients is $15,208.40. The fee sought to be approved is 50% of this total, or $7,604.20, including disbursements. The fee under Schedule A of Rule IV of the Appellate Division would be $5,572.94 plus disbursements.

From an inspection of the extensive files and records of this Court in this case, it is apparent that there is ample basis for the statement in the affidavit of the attorney that "the amount of work put into the litigation of these claims is such that the allowance of a fee on the basis of a sliding scale will result in a serious loss to us." He adds, that "even this fee would hardly be compensatory were it not for the prospect of a similar application" based upon the related claims of Amelia O'Rourke. This application is considered with the understanding by the Court that a similar application on behalf of Amelia O'Rourke will be made.

There are 118 docket entries in this Court, extensive appearances in the Surrogate's Court of the State of New York, hearings before the Commissioners to assess damages, and appeals to the Court of Appeals. See, e. g., O'Rourke et al v. Merry Queen Transfer Corp., 370 F.2d 781 (2d Cir. 1967).

█ A threshold question is whether the rules of the Appellate Division are applicable in approving fees in a matter pending in this Court. The answer in this case is that although the rules of the State regulating fees are not binding on this Court, they, nevertheless, should be applied.

█ Substantial reasons of state policy led to the adoption of the state rules regulating and limiting fees, but they are primarily based upon the Court's power to discipline attorneys. See Gair v. Peck, 6 N.Y.2d 97, 188 N.Y.S.2d 491, 160 N.E.2d 43, 77 A.L.R.3d 390 (1959). While the federal courts have independent control over attorneys practicing in federal courts, they rely heavily on state admission and discipline practice. As the United States Supreme Court remarked in In Re Isserman, 345 U.S. 286, 287, 73 S.Ct. 676, 677, 97 L.Ed. 1013 (1953):

> "This Court (as well as the federal courts in general) does not conduct independent examinations for admission to its bar. To do so would be to duplicate needlessly the machinery established by the states whose function it has traditionally been to determine who shall stand to the bar."

Even though the "two judicial systems of courts, the state judicatures and the federal judiciary, have autonomous control over the conduct of their officers," (Theard v. United States, 354 U.S. 278, 281, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957)), the Federal courts should make every effort to coordinate its discipline practice with that of the state.

██ Since, with rare exceptions, the practicing federal bar is drawn from the state bar, this Court should normally not depart from state practice respecting professional proprieties. It would create unnecessary tension for lawyers if they had to determine in each case whether state or federal professional ethics would need to be followed. Indeed, in this very case, there were proceedings in the Surrogate's Court of the State of New York as well as in this Court; obviously, the same rule on fees should apply to both since they were earned by a combination of work in both courts. Adherence to the state policy on fees in this case is "entirely consistent with federal objectives." Mishkin, The Variousness of "Federal Law": Competence and Discretion in the Choice

of National and State Rules for Decision, 105 U. of Pa.L.Rev. 79, 806 (1957).

It should be noted that the Civil Rules of this Court embody the policy of following state practice wherever there are lacunae in federal practice. Rule 15 of the Civil Rules of this Court explicitly provides that in the absence of parallels or analogies in federal rules "in the discretion of the court, the procedure which shall then prevail in the Supreme Court or in the Surrogates Court as the case may be of the State of New York may be applied." See, e. g., United States v. Noble et al., 269 F.Supp. 814 (E.D.N.Y. 1967).

In matters such as this—not usefully characterized as either procedural or substantive—the "incomplete and interstitial nature of federal law is * * * conspicuously revealed." Hart and Wechsler, The Federal Courts and the Federal System, 436 (1953). It would put the matter too strongly to say that state rules on fees apply by "incorporation" but too weakly to indicate that they are searched only for "analogy." The former term—applicable in Erie cases—implies that we are bound to New York law in all its detail when, obviously in this instance, we can ignore all or as much of the state law as we think is not appropriate in carrying out what we conceive to be federal policy. The latter term is too weak since it suggests that we can pick and choose among the states to construct a set of rules which seems sounder to us than does New York's; this state's law is the only one which provides the advantage of a single set of standards for the bar we are concerned with—lawyers who almost to a man are admitted to, and practice in, courts sitting only in New York State. "We think it proper, therefore, to draw on the ready-made body of state law." DeSylva v. Ballentine, 351 U.S. 570, 581, 76 S.Ct. 974, 980, 100 L.Ed. 1415 (1956).

█ Since the clients' consented to an increased fee after the work on their behalf was completed, New York's rule could be construed as not requiring an order of approval. The client might make a "gift" to the attorney after a fee based upon the rules of the Appellate Division was paid. Indeed, consent under the circumstances of this case might well be deemed such a "gift." But cf. Application of Weiss, 11 A.D.2d 63, 201 N.Y.S.2d 725, 729 (1st Dep't 1960) (attorney and not client has obligation to "take the initiative and make a prompt application to the court").

In view of the distinguished background of the attorney seeking this order and of his natural desire to comply meticulously with his obligations as an attorney of this Court and of the Courts of the State of New York, the order is granted in the form proposed.

So ordered.