## MARYLAND STATE BAR ASSOCIATION INC. *v.* BOONE

[No. 213, September Term, 1969.]

*Decided November 5, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, ▉ BARNES, MCWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*James McSherry, Thomas Waxter, Jr.* and *William N. Dumphy* for appellant.

*W. Lee Harrison* for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

A. Gordon Boone was admitted to the Bar of Maryland in 1937 and practiced law in Baltimore County until he was convicted of mail fraud in the United States District Court for the District of Maryland on March 5, 1964. On the following day, he addressed a letter to the Chief Judge of the Circuit Court for Baltimore County in which he tendered his resignation as a member of the Bar and requested passage by the judges of that court of an appropriate implementing order. The judges disbarred Boone from the further practice of law on March 10, 1964. Pursuant to Code (1968 Repl. Vol.), Art. 10, § 18, the Clerk of the Court of Appeals, having received a certified copy of the Circuit Court's order, struck Boone's name from the register of those authorized to practice law in Maryland. Boone was incarcerated under Federal detention from March 25, 1964, until April 14, 1965, when he was paroled. He was released from parole on March 25, 1967. The following December he applied to Governor Tawes for a pardon. The request was denied. An application to the President of the United States for executive clemency has not yet been answered.

On April 28, 1969, Boone filed a petition for reinstatement as a lawyer in the Circuit Court for Baltimore County. The court ordered that the petition be served on the president of the Baltimore County Bar Association. After a hearing on June 24, 1969, the court that day ordered Boone reinstated as a member of the Bar of Maryland, with the passive acquiescence of the Baltimore County Bar Association.

Upon learning of the court's action, the Board of Governors of the Maryland State Bar Association, Inc. (the Association) at a special meeting held on July 21, 1969,

authorized and directed the appointment of counsel to represent it in ascertaining and exercising all the rights and remedies available to the Association:

> "to proceed by way of intervention, petition for re-hearing, appeal, original petition or otherwise, in the matter of the reinstatement of A. Gordon Boone in order that the interests of the public, the Bench, the Bar, and this Association in the said proceedings may be fully served."

On July 24, 1969, counsel for the Association appealed to this Court from the order of the Circuit Court reinstating Boone. On the same day they moved the Circuit Court that the Association be allowed to intervene, for a new trial, for a rehearing, and for vacation of the order of June 24. The court gave Boone until August 19 to answer. He did so and there the matter has rested in the Circuit Court, pending the action of this Court on the appeal.

Boone asks this Court to dismiss the appeal because (1) admittedly the Association "was not a party to the proceedings before the Circuit Court for Baltimore County," and (2) the motions of the Association in the Circuit Court had not been acted on and the appeal was premature. On October 6 last we heard argument on Boone's motion to dismiss and the Association's answer in opposition and on its motion for a remand of the case without affirmance or reversal under Rule 871 a for further proceedings and judicial consideration. The latter motion urges that the rights of the public will not otherwise have been protected and that the purposes of justice will be served only by allowing the Association to present to the Circuit Court the contentions it makes in support of its motions in the Circuit Court. In those motions it sets forth that an important purpose and function of the Association is to aid the sound administration of justice and to uphold standards of integrity and honor in the legal profession, that it, as the corporate entity

composed of and representing "a majority of all lawyers practicing law in this State," has a special obligation to safeguard the rights of all citizens of the State from invasions by persons not qualified "to honor the important trust reposed in attorneys as officers of the Court serving the public." The Association, it alleges, believes that Boone's reinstatement will seriously damage public confidence in the courts and in the legal profession. It alleges serious shortcomings and defects in procedure and evidence, saying:

> "The Baltimore County Bar Association * * * took no position either by its Answer as filed, or by its representative, Giles Parker, and other members of the Executive Council who were present at the hearing. The Baltimore County Bar Association's absence of a position, either supporting or opposing the Petition, and the absence of any individual's objection, coupled with the lack of notice to this Association, resulted in the absence of anyone to represent the interests of the Bar and of the public in developing testimony and argument at the hearing before this Court. As a direct result of said failures, this Court was prevented from hearing relevant examination of witnesses, additional relevant testimony, and made no substantive inquiry into many of the critical issues in this case."

It says further that Boone's crime was not against an individual but rather one "perpetrated upon the public of this State," that it involved serious moral turpitude, that as an unpardoned felon Boone cannot vote or hold many public offices and as a matter of law the court could not properly admit him to be an officer of the court, and that there was no probative evidence of the absolutely necessary element of rehabilitation. In addition, at the hearing before us, the Association took the position that it was improper, if not a vitiation of the court's right to

act, for certain members of the Circuit Court for Baltimore County who are or had been in very close association with Boone—politically, economically, socially or in the practice of law—to have sat in the case.

We have concluded that Boone's motion to dismiss must be granted, albeit not for the reasons he gave. The Association has the proper objective public interests in the matter which it has asserted and those interests have been recognized and given effect by the rules of this Court. Maryland Rule BV 1 b says: " 'Bar Association' means either the Maryland State Bar Association or the bar association in each county * * *." Rule BV 2 a authorizes the Association to conduct investigations of attorneys, and Rule BV 3 authorizes it to file charges in court (see also Code (1968 Repl. Vol.), Art. 10, § 13), and Rule BV 6 e 2 makes the provisions of BV 3 (Charges — Subsequent Pleadings) and Rule BV 4 (Trial) applicable to proceedings instituted for reinstatement. We said in *Rheb v. Bar Association,* 186 Md. 200, 205, and *In the Matter of Lombard,* 242 Md. 202, 207, that "[i]n the last analysis the duty rests upon the courts *and the profession as a whole,* to uphold the highest standards of professional conduct and to protect the public from imposition by the unfit or unscrupulous practitioner." (Emphasis added.) The Association as a statewide body is the formal entity of "the profession as a whole." It may well be that if anyone other than the lawyer involved had a right to appeal an order of reinstatement, the proper, direct and pervading interest the Association had and has in whether Boone should have been reinstated would have entitled it to come to this Court on appeal either from that order or a failure to allow intervention even if it had not been a party when the order complained of was passed. *Weinberg v. Fanning,* 208 Md. 567, 570-571, citing *Hall v. Jack,* 32 Md. 253.

The resolution of this question becomes immaterial in light of the established and consistently adhered to practice in Maryland that there is no right of appeal in cases of admission to the Bar or refusal to disbar or reinstate-

ment to the Bar after disbarment to anyone other than the lawyer involved. The common law on the point was reviewed in 1953 by the United States Court of Appeals for the District of Columbia in *Brooks v. Laws*, 208 F. 2d 18, 25. There Judge Prettyman for the Court cited the statute of 1402, 4 Henry IV, c. 18, providing in part that "* * * all the Attorneys shall be examined by the Justices, and by their Discretions their Names put in the Roll * * *," and said:

"In Maryland the distinction between barristers and attorneys did not exist, and practicing lawyers were 'attorneys.' The statute of 4 Henry IV, above quoted, was apparently deemed to be in force and applied to all lawyers. In 1715 the Maryland Assembly enacted a statute that 'no attorney, or other person whatsoever, shall practice the law in any of the courts of this province, without being admitted thereto by the justices of the several courts, who are hereby empowered to admit and suspend them.' This appears to have been the only Maryland statute relating to the admission of attorneys in effect in 1799, when Herty's *Digest* was published, or in 1799-1800, when Kilty's *Laws of Maryland* was published. There was in Maryland an act passed in 1783 which gave to a rejected applicant in the courts of first instance an appeal to the superior courts, but this statute apparently expired by its own terms after three years. This right of appeal was considered by the Court of Appeals of Maryland in *State v. Johnston* in May, 1786. It is plain from that report that no appeal existed other than the strictly limited one granted by that statute."

In *State v. Johnston*, 2 Har. & McH. 160, Luther Martin, then the Attorney General of Maryland, sought to reverse the action of a lower court in admitting to practice one who had been a tory. The appellate Court dis-

missed the appeal and refused to grant certiorari, without assigning reasons for its action. On the strength of the reported arguments of counsel, the case has been regarded as authority for the proposition that in the absence of statutory authority an appeal will not be allowed in the case of admission, discipline or readmission of a lawyer and that the appellate Court will not grant the writ of certiorari to review the matter.

In *Petition of Brack,* 187 Md. 407, 408, the Court said:

> "As was pointed out in the case of *In re Williams,* 180 Md. 689, reported in full in 23 A. 2d 7, no appeal in cases of disciplinary action against attorneys existed to this Court prior to the Acts of 1929, Chapter 370, Section 10F, Flack's Code, Article 10, Section 17. This section provides:
>
> > 'Every attorney who shall, after a hearing held as hereinbefore prescribed, be found guilty of professional misconduct, malpractice, fraud, deceit, crime involving moral turpitude or conduct prejudicial to the administration of justice, shall have the right of appeal to the Court of Appeals of Maryland, as in civil cases, except the Court of Appeals shall have the right to review the entire proceedings and affirm, modify, alter or reverse the order from which said appeal is taken as the substantial merits of the cause and the ends of justice may require.'
>
> "By the statute this appeal is given to the attorney found guilty and not to any other person.
>
> "It was pointed out by this Court in the very recent case of *Rheb v. Bar Association of Baltimore City,* 186 Md. 200, 46 A. 2d 289, that, since the Acts of 1929, no rules have been adopted relating to disbarment or discipline of attorneys."

In *Milio v. Bar Association,* 227 Md. 527, we held that Maryland Rule 886 b, which deals with the scope of appellate review in disbarment cases, did not enlarge the right of appeal under the present § 17 of Art. 10 of the Code. Section 22 of Art. 10, "Reinstatement after Pardon," provides that "[t]he provisions of this article relating to hearing and appeal in proceedings for suspension and disbarment shall be applicable to proceedings for reinstatement under this section." In *In re Meyerson,* 190 Md. 671, 676-677, the Court entertained the appeal of a disbarred lawyer who had been denied reinstatement and Judge Markell for the Court said:

> "Under the Act of 1937 [§ 22 of Art. 10 of the Code] application for reinstatement must be made to the court which issued the disbarment order, and 'the provisions * * * relating to hearing and appeals in proceedings for * * * disbarment shall be applicable to proceedings for reinstatement * * *.' The Act of 1937 is applicable only to pardoned convicts, but by implication, we think, the same procedure is applicable to other disbarred lawyers. In the absence of any rule on the subject under Art. IV, section 18A of the Constitution (effective January 1, 1945), we have no doubt as to the validity or application of these different provisions for original applications and applications for reinstatement. It is not inconsistent for original applications for admission, usually uncontested, to be made to this court and disbarment and reinstatement proceedings to be conducted in the local courts. The provision for hearing in open court and the opportunity of the judges (some of whom may have heard the disbarment proceedings) to see and hear the witnesses is a substitute for reference of an application for reinstatement to the State Board of Law Examiners and the Character Committee, and

gives weight on appeal to the decision of the lower court."

In 1965 this Court promulgated rules governing disciplinary proceedings, including reinstatement proceedings, under the sub-title "BV" of the Maryland Rules. These rules do not change anything here pertinent held or said in *Meyerson*.

We feel constrained to dismiss the appeal and will do so, but the matter will not end with the dismissal. In light of the nature of reinstatement proceedings, the fact that the Association's motions have not been acted upon by the Circuit Court for Baltimore County and the further fact that the Association would have had no right of appeal even if it had been a party, we think that the rule recognized in *Tiller v. Elfenbein*, 205 Md. 14, 21, that "if the appeal is still pending when the motion to strike the judgment comes on for hearing, the trial court lacks jurisdiction to entertain the motion" is not controlling and the Circuit Court for Baltimore County may continue to act in the matter.

Since the passage of Ch. 139 of the Laws of 1898 (for a history of the state of things prior to 1898 see Adkins, *Bar Admission*, 28 Md. L. Rev. 103, and 52 Transactions of the Maryland State Bar Association 154-159, and *Bastian v. Watkins*, 230 Md. 325, 329-330), the Court of Appeals in the exercise of its inherent and fundamental judicial powers has supervised, regulated and controlled the admission of lawyers (of residents by examination and of non-residents by comity). The character and moral qualifications of all applicants are examined and weighed, first administratively under the rules of the Court and then if necessary on review by the Court. The statutes and the rules have consistently confided to the local courts the power to act in both disciplinary proceedings and reinstatement proceedings. This is a somewhat illogical remnant of ancient conditions and practices because a lawyer disbarred cannot practice anywhere in the State and a lawyer reinstated locally is again eligi-

ble to practice anywhere in the State, and we think the Court of Appeals has the right and the duty ultimately to supervise the exercise of disciplinary and reinstatement powers of the local courts. The Court pointed out in *Meyerson* (pp. 676-677 of 190 Md.) :

> "In some jurisdictions it is held that * * * reinstatement may be affected as a new admission to practice (*In re Boone*, C. C., 90 F. 793) and may even be subject to procedural requirements (*e. g.*, reference to committees or bar examinations) of an original application for admission. *In re Keenan, Petitioner,* 310 Mass. 166, 37 N.E.2d 516 * * *.
>
> "Whether an application for reinstatement is called an application to set aside a disbarment order or an application for admission to practice, its essential nature is the same."

The action of a court in exercising its power to disbar was characterized in *Braverman v. Bar Association*, 209 Md. 328, 336, as judicial in character but essentially an inquiry

> "in the nature of an investigation by the court into the conduct of one of its own officers, and is not the trial of an action at law, as the order which is entered is only an exercise of the disciplinary jurisdiction which a court has over its officers. It is recognized in this State and generally in America that in such an investigation, mere forms not affecting the merits should not stand in the way of protecting the court and the public by appropriate action after a full hearing."

We are impressed by and find highly persuasive the reasoning and conclusions of the Supreme Judicial Court of Massachusetts in the second *Keenan* case, 47 N.E.2d 12, 25-27, a case quite analogous to the case before us and one in which, although the Bar Associations had no right

of appeal, the appellate Court directed that the record below on which the lower court had reinstated a lawyer be forwarded to it for review. The Court said:

> The power of the judicial department to adopt appropriate procedure for proceedings for disbarment and for proceedings for admission to the bar extends to the adoption of appropriate procedure for review in such proceedings. It is a necessary implication from the exclusive jurisdiction of the judicial department of control of membership in the bar that the judicial department is not restricted in the matter of review in such proceedings to methods prescribed by statute. If this were not true the judicial department would be restricted by legislative action in the performance of its duties with respect to membership in the bar of which it has 'exclusive cognizance.' Opinion of the Justices, 289 Mass. 607, 613, 194 N. E. 313. The judicial department may adopt any procedure for review in proceedings relating to membership in the bar that it deems appropriate, though ordinarily it will follow statutory provisions for review applicable to actions at law, treating such statutory provisions as in aid of the performance of the duties of the judicial department within the field of its exclusive jurisdiction. And ordinarily the judicial department will follow the procedure for review in actions at law established by judicial decisions. But the judicial department is not precluded from adopting such other judicial procedure as it deems appropriate if in its judgment the procedure applicable to review in actions at law is inadequate."

The Court added:

> "The determination by the judicial department of the appropriate procedure to be fol-

lowed in review proceedings·for disbarment or in proceedings for admission to the bar necessarily must be made by the Supreme Judicial Court."

We will treat the appeal sought by the Association as a motion for a review by this Court of the judicial inquiry by the Circuit Court for Baltimore County "in the nature of an investigation by the court into the conduct [and fitness] of one of its own officers," and find from our review that the Association offered facts and propositions of law that *prima facie* entitle it (and the lawyers and citizens of the State on whose behalf it actually is acting) to have its day in court.

The Circuit Court for Baltimore County should strike its order reinstating Boone, admit the Association as a party to the investigatory proceedings and hold a new hearing. Those members of the Bench of the Third Judicial Circuit who have or have had such a close relationship with Boone as to prevent them or appear to prevent them from acting entirely objectively in the exercise of their judicial function in the investigatory proceeding should disqualify themselves and not sit. At the hearing the Association—and, of course, Boone — should be allowed to offer any relevant and material evidence, to cross-examine and to fully argue the matter. In determining whether Boone should be reinstated, those members of the Bench who sit should apply the standards prescribed by this Court in the *Meyerson* case. There we said (at pp. 677-679 of 190 Md.) :

> " 'A subsequent petition for admission to the bar involves a new inquiry as to whether, in the interval following the rendering of the judgment of removal, the petitioner has become a proper person to hold such office.' *In re Keenan, Petitioner, supra,* 310 Mass. at page 170, 37 N.E.2d at page 519. Such an inquiry is directed to the facts of the particular case, but seems to be approached in a somewhat different attitude

in different jurisdictions. *In re Stump*, 272 Ky. 593, 597, 114 S.W.2d 1094, 1096, the court classified the many decisions as establishing three rules, a 'lax rule', a 'strict rule', and a 'reasonable middle rule.' It would serve no useful purpose to review the multitude of cases in different jurisdictions. Some cases, we think, do reflect a 'lax rule' which is not consistent with the principles, regarding admission and disbarment, shortly stated by Lord Mansfield, expanded in the Maryland statutes and applied in rules of this court and in decisions of this court and the Supreme Court. As disbarment is not punishment, likewise we think due regard for the administration of justice does not permit disbarment and reinstatement to be made mere adjuncts to reform schools and the parole system. The authorities that seem to us the best considered take a different view, which is consistent with the principles recognized in Maryland.

"In *Matter of Kaufmann*, 245 N. Y. 423, 427, 157 N. E. 730, 731, it was held that after a lawyer, automatically disbarred upon conviction of a felony (in that case, conspiracy against the United States), has been pardoned, he may, if he can, upon application for reinstatement, prove his innocence of the crime of which he was convicted. Chief Judge Cardozo said: 'Precedents cited to the contrary hold no more than this, that reinstatement will *not* follow automatically from pardon without more. *People ex rel. Johnson v. George*, 186 Ill. 122, 57 N. E. 804. There must be convincing proof of innocence before pardon will restore to the fellowship of the bar. Even innocence of crime will not suffice if there has been a failure to live up to the standards of morality and honor. Pardon does no more than open the door to an inquiry that

would otherwise be barred. That much, however, it does.' 245 N. Y. at page 430, 157 N. E. at page 733. It was apparently undisputed that nothing short of innocence of the particular crime involved in that case would justify reinstatement. Attorney General (later Chief Justice) Stone's recommendation of pardon to the President was based on belief in innocence. In the same case Judge Cardozo also said: 'No doubt the attorney seeking reinstatement has the burden of satisfying the court of his fitness to be restored to so honorable a fellowship. For the welfare and repute of the profession the order of disbarment stands until the presumption of its correctness has been persuasively rebutted.' 245 N. Y. at pages 428, 429, 157 N. E. at page 732. The Supreme Judicial Court of Massachusetts has recently said: 'A judgment of removal of a person from his office of attorney at law does not have the effect merely of removing him. It amounts to an adjudication of the facts upon which the removal was based. While the judgment remains unreversed the adjudication of facts stands against the person removed. It is evidence against him upon his subsequent petition for admission to the bar. [Citing cases.] It is conclusive of his lack of moral character at the time of his removal from office. And it continues to be evidence against him with respect to lack of moral character at later times in accordance with the principle that "a state of things once proved to exist may generally be found to continue." [Citing case.] Whatever the offense for which a judgment of disbarment was entered, the person disbarred has a heavy burden on a subsequent petition for admission to the bar to overcome by evidence the weight of the facts adjudicated by such judgment and to establish affirmatively that

since his disbarment he has become "a person proper to be held out by the court to the public as trustworthy" '. *Matter of Keenan,* 313 Mass. 186, 219, 47 N.E.2d 12, 32. The Supreme Court of Louisiana has said: 'It may well be assumed, therefore, that the Court has the inherent power, under such rules as the Court may deem proper, to revoke the decree of disbarment and reinstate the attorney in his license to practice law. But the Court would not be disposed to exercise that power, no matter how sympathetic the members of the Court might be, unless perhaps, on being convinced that an error was committed, or an injustice done, in rendering the decree of disbarment. There is no such showing in this case.' *In re Wolff,* 173 La. 257, 136 So. 583, 584." [1]

Also there should be considered Maryland Rule BV 4 f 1 "Proof of Guilt," reading: "In a trial of charges pursuant to this Rule, an attorney's final judgment of conviction by a judicial tribunal of a crime shall be con-

---

1. Consistent with these standards laid out in Meyerson is the following from Drinker, Legal Ethics, pp. 49-50:

"While it is, of course, always possible that a disbarred lawyer may be reinstated, this, it is believed, should almost never occur except where the court concludes that the disbarment was erroneous. For a lawyer who has been found guilty of an act warranting disbarment to be reinstated justly creates an impression on the public which is very bad for the reputation of the bar, the conclusion being that this is because of friendship, pity, or political influence; which is not infrequently the case. In Matter of Shepard [35 Cal. App. 492, 501 (1917)], the court said: 'When he has been once disbarred, a mistaken charity should not restore him to his position.'

\* \* \*

"While the courts have repeatedly said that it should require much stronger proof of good character to restore a disbarred lawyer than that required on his admission, nevertheless, lawyers are continually being reinstated, after disbarment, for conduct which any character committee would have unquestionably held to preclude their original admission. Instances of this kind, often manifestly unjustified, are most injurious to the reputation of the bar in the eyes of the public."

436

clusive proof of the guilt of the attorney of such crime," and Rule BV 6 e 2 "The Provisions of Section e of Rule BV 3 (Charges—Subsequent Pleadings) and Rule BV 4 (Trial) shall be applicable to proceedings instituted pursuant to this Rule."

> *Appeal dismissed, costs to be paid by the Maryland State Bar Association, and proceedings remanded for action by the Circuit Court for Baltimore County in accordance with the views herein expressed.*