**In the Matter of G.L.S.**

**Misc. No. 2086.**

United States District Court,
D. of Maryland.

April 5, 1984.

Edward Smith, Jr., Baltimore, Md., for petitioner.

Before MILLER, MURRAY and BLACK, District Judges.

## MEMORANDUM AND RECOMMENDATION

G.L.S. has applied for admission to the Bar of the United States District Court for the District of Maryland. In his application for admission, he stated that in January, 1968, he was convicted of bank robbery in this Court. On January 23, 1984, a hearing was held before a three-judge panel to determine whether G.L.S. meets the criteria for admission.[1]

All federal courts have the power to establish requirements for admission to practice before the court. *See, e.g., Theard v. United States*, 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957); 28 U.S.C. § 1654, § 2071; Fed.R.Civ.P. 83. In exercising its power, this Court promulgated Local Rule 2 which reads in pertinent part:

"It shall be requisite for the admission of any person to practice in this Court that such person shall make written application and be sponsored by a member of the Bar of this Court and shall satisfy the Court that he or she is a member in good standing of the Bar of any Court of the United States, or the highest Court of any State, and that his or her private and professional character is good."

It is undisputed that G.L.S. has filed a written application; is sponsored by a member of the Bar of this Court; and is a member in good standing of the Bar of the Court of Appeals of Maryland. The question in this case is whether G.L.S. possesses good private and professional character.

### Factual Background

The facts of this case are set forth in detail in *In re G.L.S.*, 292 Md. 378, 439 A.2d 1107 (1982). They are summarized here.

After an honorable discharge from the United States Army in 1966, G.L.S. was employed until he was laid off in June, 1967. On October 9, 1967, he, along with two armed men, robbed the Lovettsville Branch of Farmers and Merchants National Bank of Hamilton in Lovettsville, Virginia. G.L.S. pleaded guilty in this Court to the charge of armed robbery and was sentenced to ten years in prison. He was 19 years old at the time. ·

He was incarcerated for a period of six years in several federal penal institutions. On May 17, 1974, he was released on parole.

Upon his release, he enrolled in Morgan State College from which he later received, with honors, a degree in political science. While attending Morgan State, he was married. His parole was successfully terminated approximately 13 months before his sentence expired.

In 1977, he was admitted to the University of Maryland School of Law, having disclosed to the school his conviction for bank robbery. After graduation in 1980, he applied for admission to the Bar of Maryland. The application required G.L.S. to list every place of residence for the previous ten years. He did not list any residence or address for the years he was incarcerated. The application also called for a complete record of all criminal proceedings to which he was a party. In response, the applicant wrote: "11/67—U.S. Dist. Ct. for the Dis-

---

**1.** The applicant was sentenced by Judge Roszel C. Thomsen, a member of this Court's Disciplinary Committee. Judge Thomsen took no part in the consideration or decision in this matter.

trict of Maryland." He did not describe the nature of the proceedings or the disposition of the case.

After an interview with G.L.S., a member of the Character Committee for the Eighth Judicial Circuit refused to recommend him for admission to the Bar and suggested a full committee review of the case. After a hearing of the Character Committee, which recommended G.L.S. for admission, the State Board of Law Examiners again conducted a full hearing. The State Board also recommended that he be admitted to the Bar. The Court of Appeals of Maryland agreed with the State Board's determination and ordered that G.L.S. be admitted to the Bar upon successful completion of the requisite bar examination. *In re G.L.S.*, 292 Md. at 398, 439 A.2d 1107. This requirement was met when G.L.S. passed the February, 1983 bar examination.

### Legal Analysis

It is well accepted that the highest standards of integrity and conduct must be met before a lawyer can be admitted to the bar of this, or any, court.

> "It is a fair characterization of the lawyer's responsibility in our society that he stands 'as a shield' . . . in defense of right and to ward off wrong. From a profession charged with such responsibilities there must be exacted those qualities of truth speaking, of a high sense of honor, of granite discretion, of the strictest observance of fiduciary responsibility, that have, throughout the centuries, been compendiously described as 'moral character.'"

*Schware v. Board of Bar Examiners*, 353 U.S. 232, 247, 77 S.Ct. 752, 760, 1 L.Ed.2d 796 (1957) (Frankfurter, J., concurring). Of course, "the profession of an attorney is of great importance to an individual . . . . The right to exercise it ought not to be lightly or capriciously taken from him. [But] it is extremely desirable that the respectability of the bar should be maintained, and that its harmony with the bench should be preserved." *In re Abrams*, 521

F.2d 1094, 1099 (3d Cir.), *cert. denied*, 423 U.S. 1038, 96 S.Ct. 574, 46 L.Ed.2d 413 (1975), *citing Ex Parte Burr*, 22 U.S. 529, 529–30, 6 L.Ed. 152 (1824) (Marshall, C.J.).

█ The Court of Appeals of Maryland has considered the issue of this applicant's moral character and has found him fit to become a member of the Bar of that Court. *In re G.L.S.*, 292 Md. at 398, 439 A.2d 1107. Although "admission to practice before a federal court is derivative from membership in a state bar, the federal courts maintain independent control over admission, discipline, and disbarment of attorneys in the federal courts." *Galahad v. Weinshienk*, 555 F.Supp. 1201, 1211 n. 15 (D.Colo. 1983); *see also Brooks v. Laws*, 208 F.2d 18, 22 (D.C.Cir.1953); *Petition of Merry Queen Transfer Corp.*, 269 F.Supp. 812, 813 (E.D.N.Y.1967); *Lark v. West*, 182 F.Supp. 794, 796 (D.D.C.1960), *aff'd*, 289 F.2d 898 (D.C.Cir.1961), *cert. denied*, 368 U.S. 865, 82 S.Ct. 114, 7 L.Ed.2d 63 (1961). Therefore, admission to the Bar of the highest court of Maryland does not automatically require admission to the Bar of this Court.

In its decision in *In re Braverman*, 549 F.2d 913 (4th Cir.1976), the Fourth Circuit recognized the importance "of symmetry in the standards of qualification of coordinate courts in the same state." *Id.* at 914. That court said because " '[t]here is no federal procedure for examining applicants either as to legal ability or moral character . . . reliance is placed on prior admission to the bar of a state supreme court.' " *Id.* at 921 *citing In re Dreier*, 258 F.2d 68, 69 (3d Cir.1958). In expressing concern over the effect of disparate treatment in admissions to the bars of coordinate courts, the court noted that disparate treatment would result in " 'confusion in the minds of the public, which justifiably may speculate why an attorney not qualified to practice in a federal court has sufficient moral character to practice in the state court.' " *Id.* at 921 *citing In re Abrams*, 521 F.2d 1094, 1106 (3d Cir.1975).

Although we recognize the value of symmetry in the admissions decisions of coordi-

nate courts, complete symmetry would divest this Court of the authority granted to it by statute to establish appropriate standards for its bar. If this Court is to exercise the power vested in it by statute, 28 U.S.C. § 1654, § 2071, and recognized by case law and commentators, *see, e.g., Theard v. United States,* 354 U.S. at 281, 77 S.Ct. at 1276; *In re Roberts,* 682 F.2d 105, 109 (3d 1982); *Sanders v. Russell,* 401 F.2d 241, 245 (5th Cir.1968); Cheatham, *The Reach of Federal Action Over the Profession of Law,* 18 Stan.L.Rev. 1288, 1289 (1966), the interest of symmetry must be balanced against the interest of the public sought to be protected through the independent control of this Court over admissions to its bar.

We do not read *Braverman* to require complete deference in all circumstances to a state court's decision to admit an applicant to its bar. In fact, when the Fourth Circuit Court of Appeals remanded *Braverman* with instructions to admit Mr. Braverman to practice in this Court, it did so "because of a *proper* deference to the considered judgment of the coordinate Maryland Court of Appeals." *In re Braverman,* 549 F.2d at 921 (emphasis supplied). In the view of this Court, the requirement of "proper deference" strikes a balance between the need for symmetry and the independent authority of this Court to establish standards for its bar. Proper deference, we believe, requires this Court to look closely at the state court decision granting or denying admittance to the state bar, to assess the reasons given for the decision, and to take into consideration whether the opinion was or was not unanimously rendered and, as well, to examine the mechanisms available to this Court, if any, by which an independent investigation as to the moral character of an applicant might be conducted. Only after such consideration, we believe, is deference proper.

Thus, this Court observes that, unlike the *Braverman* case in which the Mary-

land Court of Appeals in a virtually unanimous decision,[2] based on uncontroverted evidence of Mr. Braverman's rehabilitation, readmitted Mr. Braverman to the Bar of Maryland, *In re Braverman,* 271 Md. 196, 200, 203, 316 A.2d 246 (1974), the case of G.L.S. comes to this Court in a different posture. The Maryland Court of Appeals handed down a 4–3 decision to admit G.L.S. The evidence of the applicant's moral character was not uncontroverted. The majority felt that the crime in question was a single, isolated incident in the life of G.L.S. and that he had shown remorse for the crime, but the majority also recognized that G.L.S. failed to provide complete information on his bar application. *Id.* 292 Md. at 397, 439 A.2d 1107. The majority, over a strong dissent, decided to admit the applicant to the bar. *Id.* at 398, 439 A.2d 1107.

The dissenting members of the court answered an emphatic "no" to the question of whether G.L.S. should become a member of the Maryland Bar. They pointed not only to the severity of the crime, but to evidence of prison disciplinary problems with G.L.S., and to his lack of candor on the bar application form. *Id.* at 401–02, 439 A.2d 1107. Given the divergent views of the members of the Maryland Court of Appeals as to this applicant's moral character, this Court believes that the interests of symmetry are outweighed by the interests of this Court for independent control over admissions to its bar and that deference to the Maryland Court of Appeals would not here be appropriate.

It is indisputable that the high standards of character and conduct imposed on those who seek admittance to the bar are imposed for the protection of the public. *See, e.g., Murphy v. State Board of Law Examiners,* 429 F.Supp. 16, 18 (E.D.Pa.1977); *In re Cason,* 249 Ga. 806, 294 S.E.2d 520, 523 (Ga.1982); *Pushinsky v. West Virginia Board of Law Examiners,* 266 S.E.2d 444, 450 (W.Va.1980); *Bar Association v. Marshall,* 269 Md. 510, 518–19, 307 A.2d 677

---

**2.** Only Judge Smith dissented in the decision to reinstate Mr. Braverman for the reason that he showed no remorse for his crime. *In re Braver-*

*man,* 271 Md. 196, 221, 230, 316 A.2d 246 (1974) (Smith, J., dissenting).

(1963); *In re Alpert,* 269 Or. 508, 525 P.2d 1042, 1046 (1974); Comment, *Discipline of Attorneys in Maryland,* 35 Md.L.Rev. 236, 251–52 (1975).

■ It is as much to pay heed to the public's perception of the bar as in recognition of an attorney's weighty responsibility to the public that the Court must independently assess this applicant's fitness to be a member of its bar. This Court believes that any doubt that the standard has been met must be resolved in favor of the public. Few professions involve the type of responsibility to the public as the legal profession. "The attorney is entrusted with the life savings and investments of his clients. He becomes the guardian of the mentally deficient and potential savior of the accused. He is a fiduciary, a confidant, an advisor, and an advocate .... Consequently, an attorney's character must [be] beyond reproach." *State Bar Association v. Agnew,* 271 Md. 543, 549, 318 A.2d 811 (1974).

In assessing this applicant's private and professional character, this Court takes note of changes which have occurred in G.L.S.'s life since his conviction. As the Maryland court pointed out, "he ... change[d] from a person with no respect for the law to a person who wished to devote himself to the law." *In re G.L.S.,* 292 Md. at 398, 439 A.2d 1107. But doubt remains in the mind of this Court, doubts echoed by the dissent in *In re G.L.S.,* that the applicant's private and professional character is good.

It is undisputed that the applicant is a convicted federal felon and that he provided ambiguous answers about that fact in his application to the Maryland Bar. The ambiguity of those answers aside, the fact

of a federal conviction weighs heavily against an applicant to this Bar.

■ In passing, this Court notes that a convicted, unpardoned felon is deprived of certain rights in this society. In many states, a convicted felon cannot hold public office. *See* Annot. 39 ALR3d 303 (1971) and cases cited therein. While he is not seeking to be an elected or appointed official, "[a]n attorney, we sometimes tend to forget, is an officer of the court." *Baird v. State Bar of Arizona,* 401 U.S. 1, 21, 91 S.Ct. 702, 712, 27 L.Ed.2d 639 (1971) (Blackmun, J., dissenting). Furthermore, a convicted, unpardoned felon is disenfranchised under the laws of many states.[3] *See Richardson v. Ramirez,* 418 U.S. 24, 56, 94 S.Ct. 2655, 2671, 41 L.Ed.2d 551 (1974) (California law disenfranchising unpardoned felons not unconstitutional), *but see Flood v. Riggs,* 145 Cal.Rptr. 573, 583, 145 Cal. Rptr. 573 (1978) (amended California law disenfranchises felon only when in prison or on parole). Further, an unpardoned felon cannot serve on a jury in Maryland, *Md.Cts. & Jud.Proc.Code Ann.* § 8-207(b)(5) or in a federal court, 28 U.S.C. § 1865(b)(5). As indicated in these other contexts, there is at least a rebuttable presumption that an applicant to this bar, who is an unpardoned convicted felon, is not of good character. Therefore, because we have doubts concerning this applicant's good character, doubts which we believe must be resolved in favor of the public,[4] we cannot admit the applicant automatically to practice before this Court despite the fact that a bare majority of the Court of Appeals of Maryland found him morally fit to practice law in the state.

As a part of our analysis of our duty here, we have considered, as intimated in

---

**3.** This Court is cognizant of the fact that Maryland has not deprived G.L.S. of the present right to vote. A first conviction "for theft or other infamous crime" deprives a person of the right to vote only during the term of the sentence, probation, or parole. *Md.Code Ann.,* Art. 33, § 3–4(c) (1983). A second conviction disenfranchises an unpardoned felon permanently. *Id.*

**4.** We believe that, although the public may perceive an anomaly to be created when concur-

rent courts disagree as to an applicant's fitness to practice in their courts, the public is best served by an independent assessment of an applicant's character in each court. The public might find it even more anomalous that a federal felon, who is disqualified by statute from serving on a federal jury, is allowed automatically to become an officer of the federal court as an attorney.

*Braverman* is desirable, the availability of federal procedures and mechanisms to investigate the private and professional character of G.L.S. and other similarly situated applicants for admission to our bar. While perhaps overlooked in *Braverman* by both this Court and the Fourth Circuit, there does exist a federal mechanism to investigate the private and professional character of convicted federal felons.

Specifically, in cases involving federal felons, this Court holds that the applicant must exhaust federal pardon procedures.[5] Such exhaustion will provide this Court with an investigative mechanism it otherwise lacks.

By regulation, upon receipt of a pardon petition, the Attorney General of the United States must investigate the matter "as he may deem appropriate, using the services of, or obtaining reports from, appropriate officials and agencies of the Government." 28 C.F.R. § 1.6 (1983). He is also required to make recommendations to the President whether favorable or unfavorable action is warranted. ,28 C.F.R. § 1.6. Although the files prepared during the investigative process are confidential, "they may be made available for inspection, in whole or part, when in the judgment of the Attorney General their disclosure is required by law or the ends of justice." 28 C.F.R. § 1.5. Such disclosure likely would be warranted in cases like the one before this Court.

Although obtaining a pardon may not, in all cases, lead automatically to admission to the bar, *see, e.g., Lark v. West,* 289 F.2d 898 (D.C.Cir.1961), *cert. denied,* 368 U.S. 865, 82 S.Ct. 114, 7 L.Ed.2d 63 (1961); Annot., 88 ALR3d 193, 200 (1978), it will be strong evidence to rebut the presumption that a convicted federal felon is not of good private and professional character. In addition, the information gained in the process of investigation of the pardon application will aid this Court in its independent assessment of the character of applicants to its bar under these circumstances to assure that only a "proper deference" is given to the state court's determination of fitness.

 In conclusion, the undersigned Judges, constituting the three-judge panel, recommend to the full Court that federal convicted felons must apply for and exhaust the pardon procedures of the Department of Justice prior to applying for admission to the Bar of this Court and that the application of G.L.S.[6] for admission to the Bar of this Court be denied for the reasons set forth herein.

Before WATKINS and NORTHROP, Senior District Judges, and HARVEY, MILLER, YOUNG, MURRAY, RAMSEY, BLACK, and HARGROVE, District Judges.

### ORDER

The matter of whether G.L.S. meets the criteria for admission to the Bar of this

---

5. The President has the power to grant pardons under the United States Constitution, Art. II, § 2.

 "Persons seeking Executive clemency by pardon, reprieve, commutation of sentence or remission of fine shall execute formal petitions therefor. The petitions shall be addressed to the President of the United States and shall be submitted to the Pardon Attorney, Department of Justice, Washington, D.C. 20530, except for petitions relating to military offenses. Petitions and other required forms may be obtained from the Pardon Attorney." 28 C.F.R. § 1.1 (1983).

 "No petition for pardon should be filed until the expiration of a waiting period of at least five years subsequent to the date of the release of the petitioner from confinement or, in case no prison sentence was imposed, until

the expiration of a period of at least five years subsequent to the date of the conviction of the petitioner. In some cases, such as those involving violent crimes, violation of narcotic laws, gun control laws, income tax laws, perjury, violation of public trust involving personal dishonesty, fraud involving substantial sums of money, violations involving organized crime, or other crimes of a serious nature, no petition should be filed until the expiration of a waiting period of seven years. The waiting period may be waived in cases of aliens seeking a pardon to avert deportation. Generally, no petition should be submitted by a person who is on probation or parole." 28 C.F.R. § 1.2 (1983).

6. The full name of G.L.S. is filed under seal in the court file in this matter.

Court having been referred to Judges Miller, Murray, and Black as a panel of the Court; and

The panel having conducted a hearing on January 23, 1984 and having submitted to the full Court its "Memorandum and Recommendation" to the effect that G.L.S. is an unpardoned federal felon and that his application for admission to the Bar of this Court should be denied at this time; and

The opinion of the panel in support of its Recommendation having been fully considered, it is this 16th day of May, 1984, by the United States District Court for the District of Maryland,

ORDERED that the application for admission to the Bar of this Court by G.L.S. be, and is hereby, DENIED without prejudice to the right of the said G.L.S. to reapply for admission upon his exhaustion of pardon procedures of the United States Department of Justice.

FRANK A. KAUFMAN, Chief Judge, dissenting:

The opinion of all of the other judges of this Court fully sets forth the factual and legal issues. Accordingly, they will not be reviewed again in this dissent. The majority opinion states (at 380) that "in cases involving federal felons, this Court holds that the applicant must exhaust federal pardon procedures. Such exhaustion will provide this Court with an investigative mechanism it otherwise lacks." (Footnote omitted). Because I believe that the majority's holding establishes a procedure which conflicts with principles of law established by the Supreme Court of the United States and by the United States Court of Appeals for the Fourth Circuit and also because I believe that this is not a case in which this Court should take a position different from that taken by the Court of Appeals of Maryland, the highest court of the state, I respectfully dissent. I do so most reluctantly, since I not only stand alone in this

dissent but also because of the quality of the opinion filed by the majority.

In establishing what would appear to be a totally new rule, the majority suggests that both the Fourth Circuit and the judges of this Court in *In re Braverman*, 549 F.2d 913 (4th Cir.1976), "overlooked ... [that] there does exist a federal mechanism to investigate the private and professional character of convicted federal felons," [1] namely the federal pardon mechanism pursuant to which a convicted federal felon can receive a pardon from the President of the United States by submitting his petition for such pardon through the Department of Justice. With all due deference, I suggest that the reason why neither *Braverman* nor any other federal court, as far as I am aware, has required an attorney who is a convicted federal felon to exhaust the federal pardon procedure before petitioning for membership in the bar of a federal district court is that, as the Supreme Court has taught in *In re Isserman*, 345 U.S. 286, 288, 73 S.Ct. 676, 677, 97 L.Ed. 1013 (1953), a federal district court should "in the absence of some grave reason to the contrary, follow the finding of the state that the character requisite for membership in the bar is lacking" or is not lacking. Accordingly, unless some very strong need is present, a federal district court should not establish independent procedures and mechanisms to investigate the private and professional character of applicants for admission to the bar of its court but should rely on the procedures and mechanisms which have been adopted by the highest court of the state, working in conjunction with and in review of the lower state courts and the state bar associations. To do otherwise would cause exactly the confusion which Judge Rosenn referred to in his concurring opinion in *In re Abrams*, 521 F.2d 1094, 1106 (3d Cir.), *cert. denied*, 423 U.S. 1038, 96 S.Ct. 574, 46 L.Ed.2d 413 (1975):

> The district court's action permits Abrams to practice in the state, but not the federal, system. Such an anomaly

---

**1.** In *Matter of Roberts,* 682 F.2d 105, 108 (3d Cir.1982), the Court, in a per curiam opinion, stated that there "is no *federal* procedure in the district court for determining an applicant's fitness to practice law before it." (Emphasis in original).

can only lead to confusion in the minds of the public, which justifiably may speculate why an attorney not qualified to practice in a federal court has sufficient moral character to practice in the state court. Unless an exceptional reason of record justifies such disparate treatment, its effect will, in my opinion, render a grave disservice to the public.

That quotation from Judge Rosenn's concurring opinion in *Abrams* is set forth word-for-word in Judge Craven's majority opinion in *In re Braverman, supra* at 921.

I join the majority in not reading *Braverman* so as "to require complete deference in all circumstances to a state court's decision to admit an applicant to its bar." (At 378).[2] However, I differ from the majority's analysis of *Braverman* which, in effect, distinguishes this case from *Braverman*. In *Braverman*, the Fourth Circuit reversed the 6–3 majority opinion of this Court denying Braverman's application to rejoin the bar of this Court on two grounds:

> Because the evidence relied upon by the district court does not support its ultimate finding that Braverman has not been rehabilitated, and because of a proper deference to the considered judgment of the coordinate Maryland Court of Appeals ....

In so doing, Judge Craven concluded that Braverman's responses to questions put to him during an evidentiary hearing before a panel of this Court did not factually justify, either taken alone or in the light of the entire record before the Court of Appeals of Maryland, the conclusion that Braverman had not been rehabilitated. In the within case, there has been no evidentiary hearing in this Court in connection with the application of G.L.S., nor would there appear to be any need for the same. Rather, the majority of this Court, relying on precisely the same record as that considered by the Court of Appeals of Maryland, reaches a conclusion in direct contravention

to that reached by a majority of the judges of that Court, namely, that G.L.S. has not been rehabilitated and is not morally fit for admission to this Court's bar. The majority of this Court relies most heavily upon G.L.S.'s incomplete answers on his application for admission to the bar of Maryland. There is little question, as is disclosed clearly in Judge Davidson's majority opinion in *In re Application of G.L.S.*, 292 Md. 378, 439 A.2d 1107 (1982), that G.L.S. did not respond with total candor to certain questions on his application for admission to the bar of Maryland. In her opinion (at 391, 439 A.2d 1107), Judge Davidson quoted from the opinion of the Board of Law Examiners of the State of Maryland, as follows:

> To recommend the Applicant for admission involves a compromise with a standard which the Board believes is appropriate—that applicants should fully and comprehensively disclose all requested information. To recommend against admission involves a compromise with those strong perceptions which we have as a result of the hearing that the Applicant has made strides of heroic proportions in the direction of becoming a productive member of society.
>
> Recognizing the parameters of this dilemma, it is the determination of the Board, with the reservation indicated, to recommend the Applicant for admission as having adequately established his fitness, rehabilitation, and present good character.

Further, in her opinion (at 397, 439 A.2d 1107), Judge Davidson noted:

> We recognize the the applicant failed to provide complete information on his application for admission to the Bar.

However, after reviewing the circumstances involved, Judge Davidson then wrote (also at 397, 439 A.2d 1107):

> Under these circumstances, we cannot conclude that the applicant did not pos-

---

**2.** Admission to the bar of Maryland does not automatically require admission to the bar of this Court. Rather, this Court, like every feder-

al district court, possesses independent control over admission, discipline and disbarment of attorneys who practice before it.

sess a sufficient degree of candor to qualify for admission to the Bar.

Thereafter, Judge Davidson concluded that "[t]here can be no question that the applicant has been rehabilitated" (at 398, 439 A.2d 1107) and emphasized that there existed "convincing evidence of the applicant's rehabilitation" (*id.*).

In distinguishing this case from *Braverman,* the majority of this Court points out (at page 378 & n. 2) that in *Braverman* one member of the Court of Appeals of Maryland dissented from the "virtually unanimous decision" of that Court readmitting Braverman to the bar of Maryland, whereas in this case, the Court of Appeals of Maryland was sharply divided and three members of the seven-member Court dissented from the majority's holding that G.L.S. had established "his present moral character and fitness to be admitted to the Bar of this State" (at 398, 439 A.2d 1107). I believe that *Braverman* teaches that proper deference is to be accorded to the judgment of the coordinate Maryland court, regardless of whether there exists a split in the state court; further, I believe that such proper deference is not accorded here by the majority opinion.

I am troubled, also, by the majority's formulation of a per se federal pardon exhaustion requirement for federal felons who seek admission to the bar of this Court. In so doing, the majority opinion seemingly relies on the views of Judge Digges, who authored the dissenting opinion in the Court of Appeals of Maryland in *In re G.L.S.* In that dissent, Judge Digges suggested, *inter alia,* (at 403 & n. 4, 439 A.2d 1107) that since G.L.S. remained unpardoned for his conviction for a federal crime and had not sought from the President of the United States a pardon before applying for admission to the bar of the State of Maryland, the Court of Appeals of Maryland should not reinstate him while

G.L.S. "remains an unpardoned felon." In so suggesting, Judge Digges cited to Chief Judge Hammond's opinion for a unanimous Court in *Maryland State Bar Association v. Boone,* 255 Md. 420, 433–34, 258 A.2d 438 (1969). At those pages, Judge Hammond, quoted from an opinion of the Court of Appeals of New York, which in turn quoted from an earlier opinion of then Chief Judge Cardozo, to the effect that "reinstatement will *not* follow automatically from pardon without more.... Pardon does no more than open the door to an inquiry that would otherwise be barred." (Emphasis in original). In other words, a pardon by an executive officer, whether a pardon by the United States or by a governor of a state, will not in itself be conclusive. In a given case, it might well be that the state court will desire, before determining whether or not to admit or readmit an applicant to its bar, that the applicant exhaust the available pardon procedure. But there is no indication, as far as I am aware, in any decision, whether it be a federal case or a state case, that such an applicant must always be required to exhaust the pardon procedure. Additionally, as pointed out *supra* in this dissent, the adoption of any such flat rule means that contrary to the teachings of *Isserman* and its progeny, this Court would automatically initiate a factual inquiry in addition to and independent of the inquiry of the highest court of the State of Maryland in connection with any application by a federal felon for admission to the bar of this Court. Even if the majority opinion of this Court did not impose the pardon-exhaustion requirement on a per se basis in all cases of the within type, the imposition of such a requirement in this case will result in a factual inquiry in addition to that deemed appropriate and carefully and fully conducted by the State of Maryland concerning G.L.S.'s admission to the coordinate bar of the State of Maryland.[3] That, in my opinion, in a close case

3. In a given case, if there exists some specific reason for further investigation, or if it is likely that additional facts will be uncovered by such additional inquiry, the pardon route may well be a good one. In addition, in a given case, the type of problem may justify exhaustion of the pardon route. In this case, however, in which there has been a full factual inquiry by the administrative and judicial authorities in Maryland, there would appear no need to require

such as this one, is wrong. It brings to mind the old saw: hard cases make bad law. For this is a hard case, as the views of Judge Davidson and of the majority of this Court so clearly reveal. In that context, and with the greatest of respect and admiration for my fellow judges and for the clear, full opinion which they have authored, I hereby dissent.

G.L.S. to seek a pardon simply to obtain yet